MINUTEMAN PRESS
INTERNATIONAL,
INC., Appellant,

v.

William D. SPARKS and Lula M.
Sparks, Appellees.

No. 2–88–150–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 21, 1989.

**340**

Michael R. Lipscomb, Law Offices of Don R. Windle, P.C., Denton, for appellant.

Virginia Nelson Hammerle, John William Walkup, Hammerle & Associates, Denton, for appellees.

Before WEAVER, C.J., and KELTNER and MEYERS, JJ.

OPINION

KELTNER, Justice.

The issue in this case is whether the trial court erred in refusing to give full faith and credit to a New York judgment. We hold the trial court did err. As a result, we reverse and render judgment for appellant, Minuteman Press International, Inc.

The United States Constitution provides that each state must give a final judgment of a sister state the same force and effect the judgment would be entitled to in the state in which it was rendered. U.S. CONST. art. IV, sec. 1. Under the authority of the full faith and credit clause of the United States Constitution, Congress enacted a statute, now designated 28 U.S.C. sec. 1738, which dictates the manner of proving the records of judicial proceedings of other states and also provides the copies of such proceedings, when properly authenticated under the statute, "shall have ... full faith and credit in every court within the United States...." Under the statute, when a judgment of another state is properly authenticated and appears to be a record of a court of general jurisdiction, the court's jurisdiction over the cause on the parties is presumed, unless disproved by extrinsic evidence or the record itself. *Cook v. Cook*, 342 U.S. 126, 128, 72 S.Ct. 157, 159, 96 L.Ed. 146 (1951); *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938); *A & S Distrib. Co. v. Providence Pile Fabric Corp.*, 563 S.W.2d 281, 283 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r. e.); *First Nat'l Bank v. Rector*, 710 S.W.2d 100, 103 (Tex.App.—Austin 1986, writ ref'd n.r.e.).

In Texas, the enforcement of foreign judgments is governed by the Texas version of the Uniform Enforcement of Foreign Judgments Act. TEX.CIV.PRAC. & REM.CODE ANN. secs. 35.001 *et seq.* (Vernon 1986). In interpreting the Act, courts have held that the enforcing state may make a reasonable inquiry into a sister state's judgment and the jurisdiction over the parties before affording the judgment full faith and credit. *Williams v. State of North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *First Nat'l Bank*, 710 S.W.2d at 103. Specifically, a defendant may challenge the jurisdiction of a sister state to render a foreign judgment on two grounds. First, the defendant may try to demonstrate that service of process was inadequate under the service of process rules of the sister state. Second, the defendant may assert that the sister state's exercise of jurisdiction does not meet the requirement of that state's long arm statute and due process of law. *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966); *First Nat'l Bank*, 710 S.W.2d at 104.

In interpreting both the Uniform Enforcement of Foreign Judgments Act and the Texas version of the Act, courts have held that when a plaintiff sues on a foreign judgment of a sister state and introduces a properly authenticated copy of the judgment, a prima facie case for enforcement of the judgment is presented. *First Nat'l Bank*, 710 S.W.2d at 103. Thereafter, the

burden of attacking the judgment and establishing any reason why it should not be given full faith and credit shifts to the defendant. *Williams*, 325 U.S. at 235, 65 S.Ct. at 1097–98; 89 L.Ed. at 1584; *First Nat'l Bank*, 710 S.W.2d at 103.

In this light, we examine the evidence introduced at trial.

William and Lula Sparks decided to purchase a printing business in Lewisville, Texas. The business was operated as a franchise of Minuteman Press International, Inc. pursuant to a franchise agreement. In order to purchase the business, the Sparks were required to execute a new franchise agreement, which called for the payment of a franchise fee equal to 6% of the gross revenue of the business. On the other hand, Minuteman Press had the obligation to provide technical assistance, seminar training, and a model business system.

The franchise agreement provided that all rights and agreements of the parties would be governed by the laws of the State of New York and that any litigation regarding the agreement or between the parties of the agreement would be tried in the State of New York. The Sparks initialled a page of the agreement that had the provisions regarding New York law. However, they maintained they did not read that page nor understand that they could be brought to court in the State of New York.

The Sparks admitted they attended the required two-week training program in the State of New York. At this training program, they were instructed in the business system and printing process used by Minuteman Press. They were also instructed on how to "price" a job and other functions. The Sparks received periodic system bulletins, reproduction proofs for newspaper advertising, and a bookkeeping system. The agreement called for the franchise fees to be paid in New York. However, the Sparks testified they often paid the rental payments to a local Minuteman Press representative.

The Sparks testified that after a period of time they became disenchanted with Minuteman Press, and the financial obligation of the 6% franchise fee. Specifical-

ly, they did not believe Minuteman Press rendered them any valuable services. As a result, they stopped paying the franchise fee. Minuteman Press filed suit against the Sparks in New York State seeking damages for breach of the franchise agreement. The Sparks admit they were aware of the New York suit and had received service of process. However, based on the advice of counsel, they did not appear in New York to contest the suit.

At the Texas trial to enforce the New York judgment, Minuteman Press introduced the properly authenticated copy of the New York court judgment which reflected the judgment had been entered against the Sparks for a total of $9,778.94. While the court's judgment did not reflect a judge's signature, the certification stated it was a true and correct copy of the original of the judgment.

■ After hearing the evidence, the Texas judge ruled from the bench that the New York court did not have jurisdiction because there were not sufficient contacts to support in personam jurisdiction.

We disagree with the trial court and hold there were sufficient contacts to support the New York court's jurisdiction over the Sparks.

The United States Supreme Court was faced with a remarkably similar situation in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In that case, Burger King brought legal action against a franchise claiming a breach of the franchise agreement. Burger King was based in Florida, while the franchise was operated in Michigan by Michigan residents. Burger King brought suit in Florida and the franchisee filed a special appearance claiming that Burger King's claim against them did not "arise" in Florida and as a result, Florida lacked personal jurisdiction over them. *Id.*, 471 U.S. at 469, 105 S.Ct. at 2180, 85 L.Ed.2d at 538.

The United States Supreme Court held that the imposition of jurisdiction over a non-resident defendant is governed by the Due Process Clause of the United States

Constitution. *Id.*, 471 U.S. at 471–72, 105 S.Ct. at 2181, 85 L.Ed.2d at 540. The pertinent inquiry is whether the defendant purposely established "minimum contacts" in the forum state so that the defendant could reasonably anticipate being hailed into court in the forum state. *Id.* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. As a result, the Supreme Court concluded that the Florida courts had jurisdiction over the franchisee. In doing so, the court held that while a contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts, the terms of the contract taken together with the negotiations, contemplated future consequences, and the actual course of dealing can establish the minimum contacts.

In the instant case, the Sparks freely admit signing a franchise agreement with Minuteman Press. By that agreement, they obligated themselves to pay franchise fees in New York and agreed that all interpretation of contract language would be pursuant to New York law. They further agreed that any disputes to the contract agreement would be decided by New York courts. Likewise, they were obligated to and did attend a mandatory two-week business seminar in the State of New York. As a result, they obviously could expect being subjected to the jurisdiction of New York courts.

Therefore, we hold there were sufficient minimum contacts to support the assumption of jurisdiction by the New York courts.

■ Although not raised in the trial court, the Sparks now contend that Minuteman Press did not meet its burden in establishing a prima facie case by the mere introduction of the authenticated judgment. Specifically, the Sparks claim that jurisdictional facts do not appear on the face of the record to support the foreign judgment and the foreign judgment was not signed by a judge. In support of this contention, the Sparks cite our court's decision in *Interamerican Lambs Wool Prods., Ltd. v. Doxsee*

*Food Corp.* 642 S.W.2d 823 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). We disagree and hold that Minuteman Press presented a prima facie case upon the introduction of the authenticated judgment.

In *Interamerican Lambs Wool*, this court refused to enforce a foreign judgment from the State of New York, relying heavily on the previous case of *Mathis v. Wachovia Bank & Trust Co.*, 583 S.W.2d 800 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Moreover, our court held that since the judgment was not signed by a judge, but was signed by a clerk, there was no indication that the judgment was adopted by the judge of the court. *Id.* at 826.[1]

Although we do not part from precedent lightly, we disagree with the rationale and the conclusion reached by the *Interamerican Lambs Wool* court. We believe the better rule is that once a properly authenticated copy of the judgment is introduced, the burden shifts to the defendant to prove any affirmative defenses to the judgment, such as lack of jurisdiction, faulty service, lack of finality, etc. *First Nat'l Bank*, 710 S.W.2d at 103; *Schwartz v. F.M.I. Properties Corp.*, 714 S.W.2d 97, 100 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Starzl v. Starzl*, 686 S.W.2d 203, 205 (Tex. App.—Dallas 1984, no writ); *A & S Distrib. Co.*, 563 S.W.2d at 283.

■ The Sparks claim that the presumption in favor of a foreign judgment does not apply if the foreign judgment was taken by default. We disagree. While Texas courts have refused any presumption in favor of a default judgment which is directly attacked by appeal, presumption of validity has been applied in collateral attacks of judgments. *Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex.1975). Specifically, the very point relied on by the Sparks has been rejected in at least three Texas cases. *First Nat'l Bank*, 710 S.W.2d at 103; *Hart v. Calkins Mfg. Co., Inc.*, 623 S.W.2d 451,

1. We note that in the supplemental brief, Minuteman Press attached a copy of a New York statute in which it is within the province of the clerk to sign all default judgments. However, this statute was not introduced into evidence at the trial, nor was the trial court asked to take judicial notice of the statute.

453 (Tex.App.—Texarkana 1981, no writ); *A & S Distrib. Co.*, 563 S.W.2d at 286.

Therefore, we sustain appellant's two points of error, reverse the judgment of the trial court, and render judgment that the New York judgment be fully enforceable, as allowed by law, in Texas.