**CASH REGISTER SALES AND SERVICES OF HOUSTON, INC., Appellant,**

v.

**COPELCO CAPITAL, INC., Appellee.**

No. 01–99–01167–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 21, 2001.

David P. Griffith, Mayor, Day, Caldwell
& Keeton, Houston, for Appellant.

Glen A. Nordt, Coats, Rose, Yale, Holm, Ryman & Lee, P.C., Houston, for Appellee.

Panel consists of Justices WILSON, NUCHIA, and DUGGAN.*

## OPINION

DAVIE L. WILSON, Justice.

The issue for this Court is whether a collateral attack on the enforcement of a foreign judgment in Texas will succeed based on the argument that the sister state lacked jurisdiction to render judgment on the executed contract because the person signing the contract had no authority to sign the contract. The trial court impliedly held that it will not. We affirm.

The parties agree that on May 27, 1999, a New Jersey trial court[1] rendered a default judgment[2] awarding $3,557.28 debt and $131.15 costs of suit in favor of appellee Copelco Capital, Inc. (Copelco) and against appellant Cash Register Sales and Services Houston, Inc. (CRS). On July 26, 1999, Copelco filed a notice of domestication of a foreign judgment in the County Civil Court at Law No. 2 of Harris County, Texas, trial court cause no. 720010. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(a), (b) (Vernon 1997). CRS timely filed a motion to vacate. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(c) (Vernon 1997); *Walnut Equip. Leasing Co. v. Wu,* 920 S.W.2d 285, 286 (Tex.1996). The motion was supported by the affidavits of Brian Smith, president of CRS, and Sue Domicolo, a bookkeeper for CRS who had signed the contract that is the subject of the dispute. Copelco filed a response supported by the affidavit of its records keeper, Bonny Zajac.

The trial court denied the motion to vacate on September 13, 1999. On October 12, 1999, the trial court denied CRS's motion to reconsider its denial of the motion to vacate. CRS timely filed its notice of appeal on October 13, 1999.

■ Under the "full faith and credit" clause of the United States Constitution, a state must give the same force and effect to a judgment of a sister state that it would give to its own judgments. *See* U.S. CONST. art. IV, § 1. When a judgment creditor files an authenticated copy of a foreign judgment, a prima facie case for enforcement of the judgment is presented. *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.,* 976 S.W.2d 702, 712 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *Minuteman Press Int'l, Inc. v. Sparks,* 782 S.W.2d 339, 340 (Tex.App.—Fort Worth 1989, no writ); *Schwartz v. F.M.I. Props. Corp.,* 714 S.W.2d 97, 99 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Escalona v. Combs,* 712 S.W.2d 822, 824 (Tex.App.—Houston [1st Dist.] 1986, no writ); *First Nat'l Bank v. Rector,* 710 S.W.2d 100, 103 (Tex.App.—Austin 1986, writ ref'd n.r.e.). This is true even if the foreign judgment is by default. *Markham v. Diversified Land & Exploration Co.,* 973 S.W.2d 437, 439 (Tex.App.—Austin 1998, pet. denied); *Hill Country Spring Water v. Krug,* 773 S.W.2d 637, 639 (Tex.App.—San Antonio 1989, writ denied).

■ The burden then shifts to the judgment debtor to prove why the sister state's

---

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The Superior Court of New Jersey, Law Division—Special Civil Part, Bergen County, Docket Number DC 17897–98.

2. The record before us does not contain a copy of the pleadings filed in the New Jersey proceeding, but the parties agree that the action was one for breach of a lease agreement.

judgment should not be given full faith and credit. *Markham*, 973 S.W.2d at 439; *Minuteman*, 782 S.W.2d at 340–41; *Escalona*, 712 S.W.2d at 824. The presumption of validity can only be overcome by clear and convincing evidence to the contrary. *Escalona*, 712 S.W.2d at 824.

■ A defense interposed in a Texas court against the enforcement of a foreign judgment is a collateral attack. *See Corporate Leasing Int'l, Inc. v. Bridewell*, 896 S.W.2d 419, 422 (Tex.App.—Waco 1995, orig. proceeding); *Roark v. Sweigart*, 848 S.W.2d 387, 389 (Tex.App.—Amarillo 1993, no writ); *First Nat'l Bank*, 710 S.W.2d at 103. In a collateral attack on a sister state's judgment, no defense may be set up that goes to the merits of the original controversy. *See Strick Lease, Inc. v. Cutler*, 759 S.W.2d 776, 777 (Tex.App.—El Paso 1988, no writ); *Schwartz*, 714 S.W.2d at 99; *Colson v. Thunderbird Bldg. Materials*, 589 S.W.2d 836, 839 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Shaps v. Union Commerce Bank*, 476 S.W.2d 466, 468 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Krummen v. Still*, 146 S.W.2d 288, 290 (Tex.Civ.App.—Beaumont 1940, writ dism'd, judgm't correct); *see also Corning Truck & Radiator Serv. v. J.W.M., Inc.*, 542 S.W.2d 520, 526 (Mo.Ct. App.1976) (appellant's complaint that person agreeing to have repairs made was agent who could bind appellant not jurisdictional issue).

■ A judgment debtor may challenge the jurisdiction of a sister state to render a foreign judgment on two grounds. *Minuteman*, 782 S.W.2d at 340; *Hill Country Spring Water*, 773 S.W.2d at 639. First, the debtor may try to demonstrate that service of process was inadequate under the service of process rules of the sister state. *Minuteman*, 782 S.W.2d at 340; *Hill Country Spring Water*, 773 S.W.2d at 639.[3] Second, the debtor may assert that the sister state's exercise of personal jurisdiction over it offends due process because it does not have minimum contacts with the sister state. *Minuteman*, 782 S.W.2d at 340; *Hill Country Spring Water*, 773 S.W.2d at 639; *First Nat'l Bank*, 710 S.W.2d at 104.

CRS challenges the New Jersey judgment on the second ground, its absence of minimum contacts with the state of New Jersey. It repeats in its brief what the Smith affidavit stated in support of the CRS motion to vacate the New Jersey judgment filed below: that CRS is a Texas corporation with only three offices, all in Texas; that none of its directors, officers, employees, agents, or representatives are in New Jersey or have traveled there; that it has never conducted business in New Jersey, advertised there, or solicited business there; that it has never had a bank account in New Jersey; that it has never owned or maintained any insurance policy, pension fund, annuity account, stock portfolio, or bond through any company in New Jersey; that it has never paid taxes to New Jersey; and that it has never had a telephone listing in New Jersey.

In anticipation of the arguments Copelco was sure to make (and did in its response), the affidavit also stated:

> CRS received adequate notice under prevailing New Jersey long-arm law and purposefully ignored it. CRS admits the default was proper, at least to the details of service of process, and makes no challenge to the New Jersey judgment under the first ground.

---

3. CRS does not complain that it was not properly served under the prevailing New Jersey long-arm statute and rules. In fact, in its "motion to reconsider denial of motion to vacate," CRS stated that it did not dispute it had been served (in Houston) in the New Jersey suit. Therefore, the Court assumes

5. Within the last five years, CRS has never, to the best of my knowledge, purchased any goods or services from New Jersey.

7. Within the last five years, CRS has never, to the best of my knowledge, transacted business with anyone in New Jersey.

17. CRS has never agreed to be sued in New Jersey. CRS has never appeared in any suit in any court in New Jersey and, except for this case, has never been sued in any court in New Jersey.

18. CRS has never entered into a contract with anyone, including the Plaintiff in this case [Copelco], located in New Jersey.

■ However, CRS concedes that "[a] bookkeeper at CRS signed several documents upon receipt of the equipment at issue." [4] One of those documents happened to be rental Agreement No. 5080551,[5] for a "refurbished EP–2050," signed by a representative of Minolta Business Systems, lessor, and by lessee, CRS, by Domicolo, "Bookkeeper" on the "authorized signature" line. It is uncontested that Domicolo signed the agreement and that Minolta subsequently assigned the agreement to Copelco. The Smith affidavit, however, stated that "[n]o authorized officer or agent of CRS ever executed any documents with Minolta concerning the equipment at issue."

CRS's argument is this: Domicolo's signing of the agreement was insufficient to establish her authority to do so, and agency is not presumed. Even if Domicolo was CRS's agent for signing contracts, her signing of the agreement constituted fraudulent inducement based on the misrepresentations of the Minolta agent. "Therefore, with the alleged consent to jurisdiction seen for what it is—no con-

---

4. The Domicolo affidavit also stated that she is a bookkeeper for CRS and not authorized to execute agreements on behalf of CRS.

5. The contract states in pertinent part:

1. RENTAL ("AGREEMENT"): We agree to rent to you and you agree to rent from us the equipment listed above ("Equipment"). You promise to pay us the rental payment according to the payment schedule shown above. The parties intend this Agreement to be a finance lease under Article 2A of the Uniform Commercial Code.
. . . .
10. ASSIGNMENT: YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN THIS AGREEMENT OR SUBLEASE, PLEDGE OR OTHERWISE ENCUMBER THE EQUIPMENT. We may sell, assign or transfer this Agreement, without notice. You agree that if we sell, assign or transfer this Agreement, the new owner will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that the right of the new owner will not be subject to any claims, defenses, or set offs that you may have against us. In the event of a sale, assignment or transfer, we agree to remain responsible for our obligations hereunder.

11. CONSENT TO JURISDICTION AND GOVERNING LAW: YOU CONSENT TO THE PERSONAL JURISDICTION OF THE COURTS OF THE STATE OF NEW JERSEY WITH RESPECT TO ANY ACTION ARISING OUT OF THIS AGREEMENT OR THE EQUIPMENT. THIS MEANS THAT ANY LEGAL ACTION FILED AGAINST YOU MAY BE FILED IN NEW JERSEY AND THAT YOU MAY BE REQUIRED TO DEFEND AND LITIGATE ANY SUCH ACTION IN NEW JERSEY TO THE EXTENT PERMITTED BY LAW. YOU WAIVE TRIAL BY JURY IN ANY ACTION HEREUNDER. You agree that service of process by certified mail, return receipt requested, shall be deemed the equivalent of personal service in any such action. However, nothing in this paragraph shall be construed to limit the jurisdictions in which suit may be filed by any party to this Agreement or the means of obtaining service of process in any such suit. This Agreement shall be governed by and construed according to the laws of the State of New Jersey.

sent, all that is left is the uncontested fact that CRS had no contact with New Jersey and that it would be extremely burdensome for CRS to defend itself in New Jersey. Thus, New Jersey did not have personal jurisdiction over CRS. Accordingly, because New Jersey did not have personal jurisdiction over CRS, any judgment rendered against CRS by a New Jersey court is not entitled to full faith and credit and must be vacated."

In response, Copelco argues that:

(1) The law does not require minimum contacts with New Jersey because the contractual provision under which CRS consented to New Jersey jurisdiction is enforceable under Texas, New Jersey, and federal law.

(2) Even if minimum contacts are required, such contacts exist.

(3) Meritorious defenses, such as the lack of authority of the signing person or fraudulent inducement, must have been raised in the New Jersey lawsuit and are now untimely made.

 As we noted above, an attack on the underlying sister's state judgment in a proceeding to enforce that judgment under the full faith and credit clause is a collateral attack. *See Corporate Leasing Int'l, Inc.*, 896 S.W.2d at 422; *First Nat'l Bank*, 710 S.W.2d at 103. The grounds upon which a collateral attack may be successful are that the court rendering judgment has (1) no jurisdiction of the person, of a party, or of its property, (2) no jurisdiction of the subject matter of the suit, (3) no jurisdiction to enter the particular judgment entered, or (4) no capacity to act as a court. *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). The enforcement proceeding on a sister state's judgment may not be used to relitigate the merits of the original controversy. *See Strick Lease, Inc.*, 759 S.W.2d at 777; *Schwartz*, 714 S.W.2d at 99; *Col-*

*son*, 589 S.W.2d at 839; *Shaps*, 476 S.W.2d at 468; *Krummen*, 146 S.W.2d at 290.

A true and correct copy of the executed contract between Copelco, the assignee of Minolta, and CRS was introduced by Copelco into evidence below. In that contract, CRS consented to the jurisdiction of the courts of the State of New Jersey and acknowledged that legal action could be filed against it in New Jersey and that it could be required to defend any such action in New Jersey. The only complaint made by CRS against the contract is that Domicolo was not authorized to sign it on behalf of CRS. While seemingly attacking the New Jersey judgment on grounds that the New Jersey court had no jurisdiction over CRS, in reality, CRS is setting up defenses that go to the merits of the original controversy.

CRS failed to provide clear and convincing evidence to overcome the presumption of validity of the New Jersey judgment. The trial court correctly denied CRS's motion to vacate.

The trial court's order denying CRS's motion to vacate judgment, thereby allowing enforcement of the New Jersey judgment, is affirmed.

Justice NUCHIA dissenting.

SAM NUCHIA, Justice, dissenting.

It is axiomatic that a contractual forum selection clause in and of itself is insufficient to establish that "minimum contacts" exist between the party against whom the clause is enforced and the forum so selected. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985); *Minuteman Press Int'l, Inc. v. Sparks*, 782 S.W.2d 339, 342 (Tex.App.—Fort Worth 1989, no writ).

The Supreme Court noted in *Burger King* that personal jurisdiction was waivable, and that forum selection clauses obtained through "freely negotiated" agreements that were not "unreasonable and unjust" did not offend due process. *See id.,* 471 U.S. at 472 n. 14, 105 S.Ct. at 2182 n. 14. The Fort Worth Court of Appeals noted in *Minuteman* that a contract alone did not establish minimum contacts; instead, the court considered the contract, the negotiations preceding the contract, contemplated future consequences, and the actual course of dealing. 782 S.W.2d at 342 (citing *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184). In a fact situation strikingly similar to that before us, a New Jersey court refused to grant a summary judgment motion enforcing a New York default judgment because there was some evidence of fraud in the signing of the contract containing the forum selection clause on which the New York judgment was based. *See Fairfield Lease Corp. v. Liberty Temple Universal Church of Christ, Inc.,* 221 N.J.Super. 647, 535 A.2d 563, 566–67 (Law Div.1987).

The only basis for the New Jersey court to exercise jurisdiction over appellant, Cash Register Sales and Services of Houston, Inc. (CRS), was the forum selection clause contained in the lease agreement between Minolta Business Systems (Minolta) and CRS. Setting aside the issue of whether Domicolo had authority on behalf of CRS to execute the lease agreement, the affidavits of Smith and Domicolo constitute clear and convincing evidence that there were no minimum contacts between CRS and New Jersey other than this one lease agreement and that the forum selection clause was neither freely negotiated nor reasonable and just. Copelco Capital, Inc. (Copelco) never controverted through affidavit the lack of minimum contacts (other than the forum selection clause), nor did it controvert the assertions of CRS

concerning the representations made to it by Minolta at the time the lease agreement was executed.

The trial court incorrectly denied CRS's motion to vacate. I would reverse the trial court's order denying CRS's motion to vacate judgment and grant the motion, denying enforcement of the New Jersey judgment.