Appellee’s/Relator’s Motion for Rehearing Overruled; Petition for Writ
of Mandamus Denied; Reversed and Rendered; Opinion of A















Appellee’s/Relator’s Motion for
Rehearing Overruled; Petition for Writ of Mandamus Denied; Reversed and
Rendered; Opinion of April 17, 2003, Withdrawn, and Substitute Opinion filed
January 29, 2004.

 

 

In The

 

Fourteenth
Court of Appeals

____________

 

NOS. 14-02-01040-CV &

      14-02-01050-CV

____________

 

MINDIS METALS, INC. D/B/A
MINDIS RECYCLING, Appellant

 

V.

 

OILFIELD MOTOR &
CONTROL, INC., Appellee

 

and

 

IN RE MINDIS METALS, INC. D/B/A MINDIS RECYCLING, Relator

 

______________________________________________________________________

 

On Appeal from the 189th District Court

Harris County, Texas

Trial Court Cause No. 02-24121

and

Original Proceeding

Writ of Mandamus

 

______________________________________________________________________

 

S U B S T I T U T E   O P I N I O N

            Appellee’s/Relator’s Motion for Rehearing is
overruled.  The original opinion issued
on April 17, 2003 is
withdrawn, and the court issues this substitute opinion.

 class=Section2>

            Mindis Metals, Inc. d/b/a Mindis
Recycling filed a petition for writ of mandamus and an appeal following the
trial court’s order vacating a domesticated foreign judgment.  We consolidated these proceedings.  We deny the petition for writ of
mandamus.  We reverse and render,
reinstating the judgment.

I. 
Background

            In
1996, Mindis, a Georgia company, purchased some
machinery from OMC Controls, Ltd. (“Controls”), OMC Motor & Control Services,
Inc. (“OMC Services”), and Oilfield Motor & Control, Inc. (“Oilfield”)
[collectively, “the defendant-sellers”], all Texas companies.  Mindis contends the
machinery was defective and the defendant-sellers refused to honor their
warranty.  In 1998, Mindis
sued the three defendant-sellers in Georgia state
court for breach of contract and breach of express and implied warranties.  Mindis sought to
recover the sums it expended repairing the machinery.  An attorney representing the three
defendant-sellers filed an answer.  After
extensive discovery, the Georgia court
permitted the defendant-sellers’ counsel to withdraw from the case.

            In
February 2001, the Georgia court
entered summary judgment against all three defendant-sellers on liability and
set a date for trial on unliquidated damages.  At the first trial setting in August 2001,
new defense counsel, acting only for Oilfield, requested and obtained a
sixty-day continuance.  At the second
trial setting in November 2001, new counsel for Oilfield announced that OMC
Services had filed for bankruptcy.  At
that time, the attorney stated that he did not represent any defendant-seller;
however, he requested a continuance on behalf of the two non-bankrupt
defendant-sellers and departed when it was denied.  The trial judge allowed Mindis
to proceed against Oilfield and Controls. 
On November
 20, 2001, Mindis obtained a judgment
in the amount of $116,653.88, jointly and severally, against Oilfield and
Controls.  Oilfield appealed the Georgia judgment;
however, no supersedeas bond was purchased and filed
in Georgia. 

            Meanwhile,
Mindis duly domesticated the Georgia judgment
in Texas by filing
a notice and authenticated copy in the Harris County District Clerk’s
office.  Less than thirty days later,
Oilfield filed a Motion to Vacate the Judgment.[1]  After it was overruled by operation of law,
Oilfield filed a Supplemental Motion to Vacate. 
Subsequently, while the trial court retained plenary power, it vacated
the domesticated judgment without stating a reason for its ruling.  Mindis then filed a
petition for writ of mandamus and this appeal. 
After oral argument, Mindis filed its
Supplement to Petition for Writ of Mandamus informing us that the Georgia appeal has
been dismissed “as abandoned.”[2]

II. 
Mandamus or Appeal?

            Because
the vehicle for challenging an order vacating a domesticated foreign judgment
is unclear, Mindis filed both a petition for writ of
mandamus and an appeal.  In its first
issue, Mindis suggests that mandamus is appropriate because
the order is interlocutory, and, thus, not appealable.[3]  See
Walker v. Packer, 827 S.W.2d 833, 839–40 (Tex. 1992)
(holding mandamus will not issue if there is an adequate remedy by appeal).

            Our
sister courts have reviewed orders vacating domesticated foreign judgments both
as mandamus proceedings and as appeals.  Compare In re Jackson Person & Associates, Inc., 94 S.W.3d 815 (Tex.
App.—San Antonio 2002, orig. proceeding);
Corporate Leasing Int’l, Inc. v. Bridewell, 896
S.W.2d 419 (Tex. App.—Waco 1995, orig. proceeding); Trinity Capital Corp. v. Briones, 847
S.W.2d 324 (Tex. App.—El Paso 1993, orig. proceeding); Merritt v. Harless, 685 S.W.2d 708 (Tex.
App.—Dallas 1984, orig. proceeding) with
Brown’s Inc. v. Modern Welding Co., 54 S.W.3d 450 (Tex. App.—Corpus Christi
2001, no pet.) (affirming trial court order denying petition for domestication
and vacating Washington state judgment); Lawrence
Sys., Inc. v. Superior Feeders, Inc., 880 S.W.2d 203 (Tex. App.—Amarillo
1994, writ denied) (affirming order of trial court vacating and rendering null
and unenforceable Oklahoma court order); Minuteman
Press Int’l, Inc. v. Sparks, 782 S.W.2d 339 (Tex. App.—Fort Worth 1989, no
writ) (reversing trial court’s refusal to give full faith and credit to New
York judgment); Strick Lease, Inc. v. Cutler, 759 S.W.2d 776
(Tex. App.—El Paso 1988, no writ) (affirming stay of execution of Pennsylvania
judgment for lack of in personam jurisdiction).  We conclude that an appeal, rather than a
mandamus proceeding, is the better vehicle for reviewing the order in this
case.

            With
a few mostly statutory exceptions, an appeal may be taken only from a final
judgment or order.  See Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 195 (Tex. 2001). A
judgment or order is final for purposes of appeal if it disposes of all parties
and all issues in a case, so that no further action is required by the trial
court, except as necessary to carry out the decree.  See id.; Harper v. Welchem,
Inc., 799 S.W.2d 492, 494 (Tex. App.—Houston [14th Dist.] 1990, no writ)
(citing Wagner v. Warnasch,
156 Tex. 334, 338,
295 S.W.2d 890, 892 (1956)).  The
finality of a judgment or order is controlled by its substance, not its label
or form.  See Mathes v. Kelton,
569 S.W.2d 876, 878 n.3 (Tex. 1978); Int’l Sec. Life Ins. Co. V. Spray, 468
S.W.2d 347, 350 (Tex. 1971); Quanaim v. Frasco Rest.
& Catering, 17 S.W.3d 30, 36–37 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied); Ferguson v.
Naylor, 860 S.W.2d 123, 129 (Tex. App.—Amarillo 1993, writ denied); see also In re Tex. Natural Res. Conservation Comm’n, 85 S.W.3d
201, 205 (Tex. 2002)
(citing Qwest Communications Corp. v. AT
& T Corp., 24 S.W.3d 334, 336 (Tex. 2000)).

            Here,
Mindis sought to enforce the Georgia judgment
in Texas pursuant
to the Uniform Enforcement of Foreign Judgments Act (“UEFJA”) by filing an
authenticated copy with the Texas court.  See
generally Tex. Civ.
Prac. & Rem. Code Ann.
§§ 35.001 – .008 (Vernon 1997).  The
judgment became enforceable as a Texas judgment
on the date it was filed.  See Tex.
Civ. Prac. & Rem. Code Ann. § 35.003; Walnut Equip. Leasing Co., Inc. v. Wu, 920 S.W.2d 285, 286 (Tex.
1996).  It was subject to the same
defenses and proceedings for reopening, vacating, or staying a judgment as a
judgment of the Texas
court.  See Tex. Civ.
Prac. & Rem. Code Ann.
§ 35.003(c).

            A
motion contesting enforcement of a foreign judgment operates as a motion for
new trial.  See Moncrief
v. Harvey, 805 S.W.2d 20, 23 (Tex.
App.—Dallas 1991, no writ) (analogizing motion to vacate to motion for new
trial with respect to filing deadlines and appellate timetables).  Ordinarily, an order granting a new trial is
interlocutory, and not appealable.  See
Cummins v. Paisan
Constr. Co., 682 S.W.2d 235, 236 (Tex.
1984).  However, an order that denies
enforcement of a foreign judgment is not necessarily interlocutory in the same
manner as a traditional order granting a new trial and/or vacating a
judgment.  A new “trial” is not possible
because there was no Texas trial in
the first place; the filing of the foreign judgment comprises both an original
petition and a final judgment.  See Walnut Equip. Leasing, 920 S.W.2d at
286.  Obviously, a Texas court
cannot order a new trial to take place in the foreign jurisdiction.

            Here,
the trial court did not order a “new trial” in terms of returning the parties
to their positions before the Georgia judgment
was rendered.[4]  It simply ruled that “the foreign Judgment
filed by Mindis is not entitled to full faith and
credit and is not enforceable in the 

 class=Section3>

State of Texas and that the filing of the foreign
judgment is of no consequence or effect.” 
Once the trial court ruled that the Georgia judgment
was not enforceable in Texas, it
terminated the outstanding claims and rights of all parties to this UEFJA
proceeding, and there remained nothing for it to adjudicate.  Accordingly, the order vacating the judgment
was final for purposes of appeal.  See Reading & Bates Constr. Co. v. Lloyd, 1995 WL 662623, at *1 (Tex. App.—Houston [14th
Dist.] Nov. 9, 1995, orig.
proceeding) (not designated for publication) (stating order refusing to
recognize foreign judgment was final and appealable
because relator brought the action solely for recognition and enforcement of
the judgment).

            Further,
a creditor seeking to enforce a foreign judgment by filing a common-law action
may appeal an adverse ruling.  See, e.g., McElreath v. McElreath,
162 Tex. 190, 345
S.W.2d 722 (1961).[5]  Similarly, a creditor seeking to enforce a
foreign judgment under the UEFJA should be allowed to appeal an adverse
ruling.  In addition, a debtor may appeal
the denial of a motion to vacate a judgment in a UEFJA proceeding because a
“judgment” remains in place.  See, e.g., Walnut Equip. Leasing, 920 S.W.2d at 285; Cash Register Sales & Serv. of Houston,
Inc. v. Copelco Capital, Inc., 62 S.W.3d 278
(Tex. App.—Houston [1st Dist.] 2001, no pet.). 
Allowing a creditor also to appeal an adverse order in a UEFJA
proceeding promotes parity to creditors.

            Accordingly,
the trial court’s order vacating the domesticated Georgia judgment
is appealable. 
We overrule Mindis’s first issue and deny its
petition for writ of mandamus.




 








III. 
Did The Trial Court Abuse Its Discretion By Vacating The 

Domesticated
Foreign Judgment?

 

            Mindis’s
second and third issues constitute its appeal from the order vacating the
domesticated Georgia
judgment.  Mindis
generally contends the trial court erred by vacating the judgment.

                                                    A.  The Applicable Law

            The
United States Constitution requires that full faith and credit be given in each
state to the public acts, records, and judicial proceedings of every other
state.  U.S. Const. art. IV, § 1.  Under this principle, Texas is
required to enforce a valid judgment from another state.  See Bard v. Charles R. Myers
Ins. Agency, Inc., 839 S.W.2d 791, 794 (Tex. 1992); Cash Register Sales, 62 S.W.3d at 280; Reading & Bates Const. Co. v. Baker Energy Res. Corp., 976
S.W.2d 702, 712 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  The party seeking to enforce a foreign
judgment has the initial burden to present a judgment that appears on its face
to be a final, valid, and subsisting judgment. 
Russo v. Dear, 105 S.W.3d 43,
46 (Tex. App.—Dallas 2003, pet. denied). 
When a judgment creditor files an authenticated copy of a foreign
judgment pursuant to the UEFJA, a prima facie case for its enforcement is presented.  Mitchim v. Mitchim, 518 S.W.2d 362, 364 (Tex. 1975); Cash Register Sales, 62 S.W.3d at 280; Reading & Bates Const. Co., 976
S.W.2d at 712.  The burden then shifts to the judgment
debtor to prove that the foreign judgment should not be given full faith and
credit.  Mitchim, 518
S.W.2d at 364; Cash Register Sales,
62 S.W.3d at 280–81; Reading & Bates
Const. Co., 976 S.W.2d at 712.  The
presumption of validity can only be overcome by clear and convincing evidence
to the contrary.  Cash Register Sales, 62 S.W.3d at 281; Escalona v. Combs, 712 S.W.2d 822, 824 (Tex. App.—Houston [1st
Dist.]1986, no writ).  The laws of the
state rendering the judgment determine its validity.  Bard,
839 S.W.2d at 795.

            The following exceptions to full
faith and credit are well-established:




            (1)       when
a decree is interlocutory; Bard, 839
S.W.2d at 794;

(2)       when a decree is subject to modification under the law of the
rendering state; id.;

(3)       when the rendering court lacks jurisdiction; Brown’s Inc., 54 S.W.3d at 454, 456;[6]

(4)       when the judgment was procured by extrinsic fraud; see, e.g., Strick Lease, 759 S.W.2d at 777; and

(5)       when the period for enforcing the foreign judgment has
expired.  See Tex. Civ.
Prac. & Rem. Code Ann.
§ 16.066 (Vernon 1997) (proscribing statute of limitations for
enforcing foreign judgment); see also Lawrence Sys., 880 S.W.2d at 211.

 

See also Reading & Bates Const.
Co., 976 S.W.2d at 712 (listing the five exceptions to full
faith and credit).

            In sum, by filing an authenticated
copy of the Georgia judgment, Mindis presented a prima facie case for its enforcement in Texas, and the
burden shifted to Oilfield to prove why it should not be given full faith and
credit.

B. 
Standard of Review

            The
standard for reviewing an order vacating a domesticated foreign judgment on
direct appeal is not clearly established. 
Compare Nat’l Collection Serv., Inc. v. Ford, 1996 WL 132240 (Tex. App.—Dallas
Mar. 22, 1996, no writ) (not designated for publication) (reviewing order
granting motion to strike filing of foreign judgment for abuse of discretion) with Brown’s,
Inc., 54 S.W.3d 450 (finding trial court did not err in vacating filed foreign judgment); Minuteman Press Int’l, 782 S.W.2d 339 (examining evidence and holding trial
court erred in refusing to give full
faith and credit to foreign judgment); see
also Cash Register Sales, 62 S.W.3d 278 (holding trial court correctly denied motion to vacate
foreign judgment because debtor failed to overcome presumption of validity by
clear and convincing evidence).

            We previously recognized that a
motion to vacate a filed foreign judgment has been analogized to a motion for
new trial.  See Moncrief,
805 S.W.2d at 23.  A trial court has
broad discretion to grant a motion for new trial, and we may not disturb its
ruling absent manifest abuse of discretion. 
See Champion Int’l Corp. v. Twelfth Court of Appeals, 762 S.W.2d 898,
899 (Tex. 1988)
(orig. proceeding); Tex. R. Civ. P. 320 (providing new trial may be granted and
judgment set aside for “good cause” on motion or the court’s own motion).  However, allowing a trial court the same broad
discretion to vacate a properly filed foreign judgment would override the
constitutional requirement that a trial court give full faith and credit to the
foreign judgment unless the debtor proves an exception by clear and convincing
evidence.  See William Dorsaneo, III, 9 Tex. Litigation
Guide §134.04[1] (2003); see also Cash Register Sales, 62 S.W.3d at 281; Escalona, 712
S.W.2d at 824.  Therefore, the UEFJA
provision that a filed foreign judgment is subject to the same procedures,
defenses, and proceedings for vacating a Texas judgment
refers to the procedural devices available to vacate a Texas
judgment.  See Dorsaneo, 9 Tex. Litigation
Guide §134.04[1].  It cannot mean that
the judgment can be vacated for any reason sufficient to support a traditional
motion for new trial.  See id.; see also Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985)
(grant of new trial “in the interest of justice and fairness”); Alm v. Aluminum Co. of Am., 717 S.W.2d 588,
594 (Tex. 1986)
(recognizing grant of new trial allowed if evidence is factually insufficient
to support verdict); Tex. R. Civ. P. 327 (allowing grant of new trial upon proof
of jury misconduct).[7]

            Nevertheless, because a motion to
vacate has been analogized to a motion for new trial, we will apply the abuse
of discretion standard recognizing, however, that the law required the trial
court to give full faith and credit to the Georgia judgment
unless Oilfield established an exception. 
See Walker, 827 S.W.2d at 840
(holding trial court has no discretion in determining the applicable law); Nat’l Collection Serv.,
1996 WL 132240, at *3–6 (concluding trial court abused its discretion by
striking filed foreign judgment because debtor failed to present clear and
convincing evidence to overcome presumption of validity). We acknowledge that
determination of whether Oilfield established an exception to full faith and
credit generally involves a factual inquiry, not resolution of a question of law.  See
Reading & Bates Const. Co., 976 S.W.2d at 713.  However, the trial court also has no
discretion in applying the law to the established facts.  See Walker, 827
S.W.2d at 840.  Therefore, we will review
the record to determine whether the trial court misapplied the law to the
established facts in concluding that Oilfield established an exception to full
faith and credit.[8]

C. 
Analysis

            Oilfield
claims it satisfied three exceptions to full faith and credit of the Georgia judgment:
(1) it is interlocutory and, thus, not final; (2) it is subject to modification
under Georgia procedural
law regarding service of motions and the setting aside of invalid judgments;
and (3) it was procured through extrinsic fraud.[9]

            1. 
Finality

            First,
Oilfield claims that the Georgia judgment
is not final on its face because judgment was not also taken against OMC
Services, the bankrupt defendant-seller. 
We disagree.  There is no evidence
or authority suggesting the judgment was not final.

            The judgment is titled, “Final Order
and Judgment as to Defendants OMC Control, Ltd. and Oilfield Motor &
Control, Inc.”  Oilfield contends the
judgment is not final and is subject to modification under Georgia law
because it does not recite “there is no just reason for delay.”  In Georgia, a court
is required to make an express determination that there is no just reason for
delay before entering a judgment “upon multiple claims or involving multiple
parties.”  O.C.G.A. § 9-11-54(b) (1993).[10]  We acknowledge that the Georgia judgment
does not incorporate the words “there is no just reason for delay.”  However, according to the record, the Georgia trial
judge acknowledged that OMC Services was bankrupt and stayed, but he refused to
stay proceedings against Oilfield and Controls. 
He also expressly directed the clerk
instanter to issue a writ of fieri facis (Georgia’s
equivalent of a writ of execution) against Oilfield and Controls.  See
Markham, 973 S.W.2d at 439 (recitals in foreign judgment are presumed to be
valid).  The exact finality and delay
language contained in O.C.G.A. § 9-11-54(b) is not required in a judgment
involving some, but not all, multiple parties in Georgia.  Cherry v. Hersch,
388 S.E.2d 64, 65 (Ga. Ct. App. 1989) (holding that “Final Judgment” order that
did not recite exact language of O.C.G.A. § 9-11-54(b) made express provision and
showed by its language a clear intent that the order be final and, therefore, appealable as to two of the four defendants).

            Additionally, the Georgia trial
court granted Mindis’s unopposed motion for Oilfield
to file a supersedeas bond.  We presume that in Georgia, as in Texas, an
interlocutory judgment cannot be enforced by execution, and an appealing party
would not be ordered to file a supersedeas bond for
an interlocutory judgment.  Fender v. Delta Mud & Drilling Co.,
697 S.W.2d 655, 657 (Tex. App.—Tyler 1985, writ ref’d
n.r.e.) (holding that in the absence of proof of laws
by judicial notice requested, the laws of another state are presumed to be the
same as Texas).  During oral argument, counsel for Oilfield
conceded that Mindis could execute on the Georgia judgment
in Georgia.

            Further, Oilfield appealed from the Georgia
judgment.  In Georgia, a party
may appeal an adverse summary judgment either before or after a final
judgment.  Culwell v. Lomas & Nettleton Co., 248 S.E.2d
641, 642 (Ga.
1978).  However, nothing in the record,
particularly nothing in Oilfield’s Notice of Appeal, suggests that Oilfield
complied with Georgia procedural
rules for appeal of an interlocutory judgment, or otherwise characterized its
appeal as being from an interlocutory judgment. 
See id.; O.C.G.A. § 9-11-54(b).[11] 

            Accordingly, the Texas trial
court misapplied Georgia law to the
established facts if it concluded that the Georgia judgment
was interlocutory, and, thus, not final.

2.  Not subject to modification under Georgia law

            Oilfield
further asserts that the Georgia judgment
should not be given full faith and credit because it is subject to being
modified or set aside under Georgia law.  Under the Georgia Rules of Civil Practice, a
party may move to set aside a judgment based on (1) lack of jurisdiction over
the person or the subject matter; (2) fraud, accident, or mistake or the acts
of the adverse party unmixed with the negligence or fault of the movant; or (3) a nonamendable
defect which appears upon the face of the record or pleadings.  O.C.G.A. § 9-11-60(d) (2003).  Oilfield complains that it did not receive
proper notice of the motion for summary judgment because Mindis
named only one of the three seller-defendants—OMC 

 class=Section5>

Services—in the certificate of service. Oilfield
asserts that the judgment is subject to being set aside under O.C.G.A. § 9-11-60(d)(3) because the allegedly faulty
certificate of service is a nonamendable defect that
appears upon the face of the pleadings.[12]  We disagree.

            Before he withdrew, Oilfield’s
original Georgia attorney
filed a document that designated one address for future contact with all three
defendant-sellers.  His Notification
Certificate and Request for Order Permitting Withdrawal as Attorneys of Record
stated:

 

The last known address of
the Clients [OMC Services, Controls, and Oilfield] was 6718 Northwinds,
Houston, Texas  77041 and the last known
telephone number was (713) 983-8600. 
Future notices may be served upon the Client at this address, which was
the only address ever provided to the Attorneys, and to the best of these
attorneys’ knowledge is still a valid address. 
These attorneys have directed correspondence to the Clients to the
attention of Mr. Richard Montegut and Mr. Paul Remback,
based on these attorneys’ understanding that they are corporate officers.

 

See Unif. Sup. Ct. R. 4.3 (requiring attorney
withdrawing in Georgia to prepare
a written notification certificate providing, among other items, the client’s
last known address).[13]

            Mindis
mailed the motion for partial summary judgment to this one address provided for
all three defendants.  Under Georgia law, a
motion may be served on a party by mailing it to the party at its last known
address, and service by mail is complete upon mailing.  See O.C.G.A. § 9-11-5(b) (2003).  Although Mindis did
not name Oilfield in the certificate of service, failure to show proof of
service does not affect the validity of service under Georgia law.  See
id.  Accordingly, any defect in the
certificate of service was amendable[14] because
Oilfield was served with the motion for summary judgment at its last known
address according to the court records.[15]  See
Montgomery v. USS Agri-Chemical Div., 270 S.E.2d
362, 365 (Ga. Ct. App. 1980) (holding when service of process was valid,
defective return of service could be amended “to speak the truth”).

            Further, Oilfield never brought the
alleged defect to the Georgia trial
court’s attention so that it could be amended. 
In particular, Oilfield never moved the Georgia court to
set aside the summary judgment while it was interlocutory.  In fact, Oilfield never brought any alleged
defenses to the Georgia court’s
attention before the summary judgment became final. In August 2001, Oilfield’s
second Georgia counsel,
Mr. Schroeder, filed a Notice of Appearance “for the limited purpose of filing
a Motion for Continuance, and Memorandum of Law in Support thereof” — and
nothing more.  Mr. Schroeder then argued
the motion for continuance at the first trial setting on damages.  Mr. Schroeder appeared again at the second
trial setting on damages to advise the court of the Notice of Bankruptcy filed
by OMC Services and to request a stay as to all defendants (even though he stressed
he did not represent the co-defendants).[16]  In both instances, Oilfield had an
opportunity to seek relief in the trial court, address the allegedly defective
certificate of service, and present any alleged defenses before final judgment
was rendered.[17]  Therefore, any defect could have been amended
before the final judgment was rendered, and would not subject the judgment to
being set aside under Georgia law.[18]

            Accordingly, the trial court
misapplied the law to the established facts if it found that the judgment is
subject to being modified or set aside under Georgia law based
on a nonamendable defect.

            3.  Not
procured by extrinsic fraud

            Finally,
Oilfield argues the Georgia judgment
should not be given full faith and credit because it was procured by extrinsic
fraud due to the defective certificate of service.  We disagree. 
While the certificate of service may not be in strict compliance with Georgia rules 

 class=Section6>

of civil procedure, non-compliance does not constitute
fraud on Mindis’s part considering Oilfield’s own
attorney gave only one address for all three defendant-sellers and Mindis served the motion for summary judgment on Oilfield
at this address.  See Looney v. M-Squared, Inc., 586 S.E.2d 44, 49 (Ga. Ct. App.
2003) (stating elements of fraud are a false representation or omission of
material fact, scienter, intent to induce the other
party to act or refrain from acting, justifiable reliance, and damages).  Further, the fact that Oilfield never
objected to the defective certificate of service, or presented any defenses, in
the Georgia trial court
before final judgment was rendered negates that the judgment was procured
through extrinsic fraud.  See Jackson v. Jackson, 328 S.E.2d 733,
735 (Ga. 1985) (defining extrinsic fraud as fraud which prevents a party from
having a trial, or from presenting all of its case to the court, or which
operates, not upon matters pertaining to the judgment itself, but to the manner
in which it is procured).  Therefore, the
trial court misapplied the law to the established facts if it found that the
judgment was procured through extrinsic fraud.[19]

            In sum, the trial court misapplied
the law to the established facts if it found that Oilfield established an
exception to full faith and credit. 
Accordingly, the trial court abused its discretion by vacating the domesticated
Georgia judgment.
We sustain Mindis’s second and third issues.[20]








            We reverse the trial court’s order
vacating the domesticated Georgia judgment
and order the judgment to be reinstated under the provisions of the UEFJA.

 

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Substitute Opinion filed January 29, 2004.

Panel
consists of Justices Edelman, Seymore, and Guzman.

 

 











            [1]  Notably, Oilfield did not request a
stay to suspend post-judgment collection in Texas while the Georgia judgment
was on appeal.  See Tex. Civ.
Prac. & Rem. Code Ann.
§ 35.006 (Vernon 1997).





            [2]  Oilfield sought to dismiss the Georgia appeal
“without prejudice” on the day before its brief and “enumeration of errors” was
due in the Georgia court of
appeals.  In its order, the Georgia court of
appeals stated that Georgia rules do
not provide for “withdrawal without prejudice.” 
Because Oilfield had not timely filed a brief and “enumeration of
errors,” the appeal was dismissed, “as abandoned.”  Thereafter, the Georgia court of
appeals denied Oilfield’s motion for reconsideration.





            [3]  When we consolidated the proceedings, we
asked the parties to address whether mandamus or appeal is the proper vehicle.





            [4]  In contrast, in each of the mandamus
proceedings previously cited, the trial court had purported to grant a new
trial when vacating a filed foreign judgment instead of simply determining
whether the foreign judgment was enforceable in Texas.  For example, in Jackson Person, the trial court used the term “new trial,” set
aside the foreign judgment, and ordered a new trial to be placed upon its own
docket.  94 S.W.3d at 817.  However, the appellate court held that a Texas court may
not grant a new trial that puts the parties back where they were before the
trial in the foreign jurisdiction.  Id.  Therefore, the trial court abused its
discretion by granting the “wrong type of relief,” and the creditor had no
remedy by appeal because a party cannot ordinarily appeal the grant of a new
trial.  Id. at 817–18.





            [5]  Texas recognizes
two methods of enforcing a foreign judgment: (1) complying with UEFJA, or (2)
filing a common-law action to enforce the judgment.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 35.008; Moncrief,
805 S.W.2d at 22.





            [6]  A defendant may challenge the jurisdiction of
a sister state by demonstrating that (1) service of process was inadequate
under the rules of the sister state; or (2) the sister state’s exercise of in personam jurisdiction offends the due process of law.  Cash
Register Sales, 62 S.W.3d at 281; Markham
v. Diversified Land & Exploration Co., 973 S.W.2d 437, 439 (Tex.
App.—Austin 1998, pet. denied).





            [7]  Unlike a motion for new trial, a challenge to
enforcement of a foreign judgment is a collateral attack, and the merits of the
original controversy may not be
challenged.  See Cash Register Sales, 62 S.W.3d at 281; Russo, 105 S.W.3d at 46–47 (holding judgment debtor’s claims that
Ohio judgment was supported by insufficient evidence and barred by collateral estoppel and res judicata were impermissible collateral attacks on the
merits of the judgment, not recognized exceptions to full faith and credit).





            [8]  Because the trial court did not specify the
grounds on which it vacated the judgment, we will consider whether Oilfield
satisfied any of its proffered exceptions.





            [9]  Oilfield raised only one exception in its
original motion to vacate.  However, it
raised additional exceptions in its supplemental motion.  Mindis argues that
the supplemental motion is a nullity because it was filed more than thirty days
after Mindis filed the Georgia
judgment.  The supplemental motion to
vacate was indeed untimely.  See Tex.
R. Civ. P. 329b(b) (providing amended motion
for new trial may be filed, without leave of court, before a motion for new
trial is overruled and within thirty
days after order complained of is signed); Voth v. Felderhoff, 768 S.W.2d 403, 412 (Tex.
App.—Fort Worth 1989, writ denied) (citing Baker
v. Wal-Mart Stores, Inc., 727 S.W.2d 53, 55 (Tex. App.—Beaumont 1987, no
writ) (per curiam); L. B. Foster Co. v. Glacier Energy, Inc., 714 S.W.2d 48, 48–49
(Tex. App.—San Antonio 1986, writ ref’d n.r.e.); Lind v.
Gresham, 672 S.W.2d 20, 22 (Tex. App.—Houston [14th Dist.] 1984, no
writ)).  However, the Texas Supreme Court
recently clarified the effect of an untimely amended motion for new trial. If
the trial court denies a new trial, the belated motion is a nullity and
supplies no basis for consideration upon appeal of grounds which were required
to be set forth in a timely motion.  See Moritz
v. Preiss, 46 Tex. Sup. Ct.
J. 784, 2003 WL 21356011, at *4 (June 12,
 2003) (citing Jackson v.
Van Winkle, 660 S.W.2d 807, 808 (Tex. 1983); Kalteyer v. Sneed, 837 S.W.2d 848 (Tex.
App.—Austin 1992, no writ)).  However,
the trial court may in its discretion consider grounds raised in an untimely
motion and grant a new trial under its inherent authority before it loses
plenary power.  See id.  Therefore, the trial
court could consider the grounds raised in Oilfield’s untimely supplemental
motion because it granted the motion to vacate while it retained plenary power.





            [10]  Oilfield’s reliance on MARTA v. Federick,
371 S.E.2d 204 (Ga. Ct. App. 1988) is misplaced and not persuasive.  That case involves an attempt to make a bad
faith claim under O.C.G.A. § 33-34-6(b)(c); it is not a determination that a
judgment should be set aside because it was not final having been entered
against fewer than all the parties and claims under O.C.G.A. § 9-11-54(b).  Further, it does not involve the stay of a
bankrupt defendant.





            [11]  As previously noted, the appeal has since
been dismissed.





            [12]  Mindis argues that
Oilfield may not raise the allegedly defective service of the motion because a
judgment debtor may only attack a foreign judgment based on defective service of process.  A debtor may challenge the jurisdiction of a
sister state to render a foreign judgment by demonstrating service of process
was inadequate under the rules of the sister state.  See
Cash Register Sales, 62 S.W.3d at 281. 
However, Oilfield relies on the allegedly defective service of the
motion to argue the judgment is subject to being set aside under Georgia law—a
separate challenge to full faith and credit from a jurisdictional challenge.





            [13]  The court subsequently entered its order
permitting Oilfield’s attorney to withdraw. 
Under Georgia law, a
court completes its involvement with an attorney’s withdrawal when it issues an
order permitting the attorney to withdraw. 
See Dunn v. Duke, 456 S.E.2d
65, 68 (Ga. Ct. App. 1995).





            [14]  In this vein, Oilfield’s reliance on TMS Ins. Agency, Inc. v. Galloway, 424
S.E.2d 71 (Ga. Ct. App. 1992) is unpersuasive. 
In TMS, contrary to the
court’s order, only former counsel, not the client, was sent notice of a
hearing on the motions at issue; thus, this lack of notice constituted a nonamendable defect under O.C.G.A. § 9-11-60(d).  Id. at
72.  In contrast, here, the motion for
summary judgment was sent to the client at the last known address on file with
the court.





            [15]  Oilfield claims that this was not its address
because its original counsel did not provide the proper address when he
withdrew.  However, Oilfield admits it
was OMC Services’ address.  The
certificate of service was addressed to Richard Montegut at OMC Services.  Mr. Montegut was also a vice president and
fifty-percent shareholder of Oilfield. 
Notice to a vice president, Mr. Montegut, would be imputed to the
corporation, Oilfield.  See Brown v. Cooper, 514 S.E.2d 857, 863
(Ga. Ct. App. 1999).  Oilfield also
claims it had no notice of its original attorney’s withdrawal.  However, the attorney directed the withdrawal
notice to Mr. Montegut at the Northwinds
address.  Accordingly, notice to Mr.
Montegut of the withdrawal constituted notice to Oilfields.  In addition, according to the affidavit of
its president, Oilfield knew that its attorney communicated mainly with OMC
Services—not with Oilfield—because the main allegations were against OMC
Services.  Under Georgia law, it
was Oilfield’s obligation to monitor the litigation to which it was a party, or
suffer the consequences.  See Dunn, 456 S.E.2d at 68.  Finally, in the withdrawal notice Oilfield
was informed of its burden to keep the court informed regarding where pleadings
may be served.  There is no evidence that
Oilfield provided the court with any alternate address before Mindis served its motion for summary judgment at the
address mentioned in the withdrawal notice.





            [16]  Despite Oilfield’s complaint about the
service of the motion, it clearly was aware of the interlocutory summary
judgment before final judgment was rendered. 
Yet, Oilfield did not assert lack of notice, or any defenses, during the
nine-month period between the interlocutory summary judgment and the final
judgment.





            [17]  Even a nonamendable defect will not
subject a judgment to being set aside under Georgia law if it
could have been presented to the trial court before judgment was rendered.  See
Marshall v. Marshall, 360 S.E.2d 572, 574 (Ga. 1987)
(holding absent some compelling reason, motion to set aside under O.C.G.A. § 9-11-60(d) based upon grounds which the movant knew or in the exercise of reasonable diligence
should have known at the time of the judgment will not be granted).





            [18]  Oilfield also never moved the Georgia court to
set aside the final judgment, and its Georgia appeal
from the judgment has been dismissed “as abandoned.”  Any ruling by the Georgia Court of Appeals in
a case is binding in all subsequent proceedings in that case in the lower
court.  See O.C.G.A. §9-11-60(h)
(2003).  However, there is Georgia authority
that dismissal of an appeal for procedural reasons, as opposed to disposal on
the merits, will not bar a subsequent motion to set aside.  See
Giles v. Vetsakis, 585 S.E.2d 905, 906–07 (Ga.
Ct. App. 2003).  Further, a party
generally has three years from entry of a judgment to move the trial court to
set it aside.  See O.C.G.A. § 9-11-60(f)
(2003).  On the other hand, if in the
exercise of due diligence, a party could have discovered the ground for setting
aside a judgment and raised it on appeal, it will not be excused from the
exercise of such diligence.  See Marshall, 360 S.E.2d at 573–74
(reversing trial court’s setting aside May 1986 judgment because motion not
filed until December 1986, there had been no appeal, and no ground was raised
in the motion which could not have been asserted in an appeal).  Nevertheless, we need not consider the effect
of Oilfield’s appeal being dismissed on a subsequent motion to set aside
because any defect was amendable as a matter of law and would not subject the
judgment to being set aside.





            [19]  Extrinsic fraud is an independent exception
to full faith and credit, but fraud is also a ground for setting aside a
judgment under O.C.G.A. § 9-11-60(d).  Nevertheless, the judgment was not procured
by any fraud, much less extrinsic fraud, so Oilfield’s fraud argument does not
support either exception.





            [20]  In its fourth issue, Mindis
contends that the trial court exceeded its authority in also vacating the
judgment on behalf of Controls because Controls did not file a motion to
vacate.  However, our ruling that the
trial court abused its discretion by vacating the judgment renders this issue
moot.