Jayne Ann **WOODS**, Commissioner of Revenue for the State of Tennessee, Appellant,

v.

**HOLIDAY INN OF MURFREESBORO**, a corporation, Appellee.

Supreme Court of Tennessee.

May 29, 1979.

Jim G. Creecy, Asst. Atty. Gen., Nashville, for appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

Ken Burger, Burger, Fly & McFarlin, Murfreesboro, for appellee.

## OPINION

BROCK, Justice.

The Holiday Inn of Murfreesboro filed this action in Chancery Court seeking a restraining order to prevent the imposition of a privilege tax under T.C.A., § 67–4102, Item U.[1] It subsequently paid the tax of $10,312.32 under protest and amended the complaint to seek its refund. The Chancellor granted the refund plus interest and penalty, $12,639.03, and the Commissioner has appealed from that judgment.

T.C.A., § 67–4102, taxes the privilege of selling "mixed drinks and/or setups for mixed drinks." The Murfreesboro Holiday Inn under a single roof operates a motel, restaurant and the Bavarian Lounge. The lounge features modern sound and light systems with "disco" music for dancing. It is regularly frequented by local college students, accommodates approximately 75 persons and is usually crowded. Mixed drinks are not served; however, a bar is maintained to serve beer, water and soft drinks. The bartender characterizes the lounge as a "beer bar." Beer is sold for $0.80 to $0.90; soft drinks and water are sold for $1.00. The Commissioner's estimate, based upon the taxpayer's records, is that during the four year period in question, 1974–1977, the sale of soft drinks and water brought in receipts of approximately $68,748.00, which, assuming that sales were made six days per week, amounts to approximately $55.00 per day.

The Commissioner of Revenue asserts that the sales of water and soft drinks were sales of setups within the meaning of T.C.A., § 67–4102, Item U(b)2, which defines "setups" as follows:

"2. 'Mixed drinks and/or setups for mixed drinks' shall mean and include any sales of beverages containing any alcohol-ic content, other than beer, and shall include sales of water, soft drinks, ice or any item capable of being used to prepare a mixed drink at a place of business of a person liable for the tax imposed by this item."

The Holiday Inn contends that: (1) it has a policy against "brownbagging" and (2) that it charges $1.00 for soft drinks and water only to discourage those patrons who do not buy beer from utilizing its facilities without contributing to the cost of providing entertainment. It had not imposed a cover charge prior to the assessment here at issue.

It is undisputed that brownbagging has occurred. Two employees of the lounge testified that they had mixed drinks from their own bottles while in the lounge. They were reprimanded by superiors and have not done so again. There was also testimony that some persons seen brownbagging were asked to remove the liquor from the lounge or to leave the premises if they refused. The employees admit that there must have been instances of brownbagging that they did not observe. They explained that the lounge was usually very busy and crowded and that they could not watch closely for brownbaggers. Since the assessment was levied, an additional employee has been stationed at the door to watch for brownbaggers.

The Chancellor concluded that the Holiday Inn had not solicited, promoted, nor encouraged the use of its premises for the sale of setups and, thus, was not liable for the "setup" tax because, in his opinion, the tax is applicable only to one who sells water and soft drinks with the clear intent that they be used to prepare mixed drinks of alcoholic beverages.

The Commissioner has appealed and asserts that the intent of the taxpayer is irrelevant and that the fact that the beverages were in fact used by customers to mix drinks is sufficient to establish the tax liability. We agree.

1. T.C.A., § 67–4102, Item U, is reprinted in part in the Appendix.

The facts are not really in dispute; the issue is the proper construction and application of the statute. As applicable to this taxpayer, the Act taxes the privilege of selling "setups for mixed drinks" which include ". . . sales of water, soft drinks, ice or any item capable of being used to prepare a mixed drink at a place of business of a person liable for the tax imposed by this item." The only "intent" of the seller that is required is the intent to sell items knowing that they are ". . . capable of being used to prepare a mixed drink." It is not necessary to show that the seller knew of the buyer's purpose to use the setup for preparation of a mixed drink. Sales of setups by cafes, cafeterias and restaurants which are merely incidental to the principal business are excluded by the statute, provided, no bar, lounge or separate facility is maintained for the purpose of serving or selling mixed drinks or setups for mixed drinks.

The evidence shows that during the taxable period the taxpayer had a substantial volume of sales of water and soft drinks in its "beer bar" and that these items were often used by "brownbaggers" in preparing mixed drinks. This sufficiently shows that the taxable privilege was exercised and the tax liability incurred. Cf. *Hound's Tooth of America, Inc. v. Benson*, 223 Tenn. 340, 444 S.W.2d 283 (1969).

We hold that the plaintiff has failed to show that the taxes in issue were unlawfully collected. The decree of the trial court is reversed and the complaint dismissed at the cost of the plaintiff.

HENRY, C. J., and COOPER, FONES and HARBISON, JJ., concur.

### APPENDIX

"*Item U. Establishments selling mixed drinks or setups for mixed drinks—Exceptions.*—(a) Each person selling mixed drinks and/or setups for mixed drinks, as hereinafter defined, which aforesaid sale of setups for mixed drinks is hereby declared to be lawful in localities where the sale of packaged alcoholic beverages is lawful, shall for the privilege of doing such business pay to the state for state purposes an amount equal to fifteen per cent (15%) of the gross receipts, as hereinafter defined, in this state. This item shall also include the sale of setups for mixed drinks for consumption by persons supplying alcoholic beverages from their own bottle or other container on the premises of persons holding licenses under §§ 57–152—57–164 to dispense alcoholic beverages for consumption on the premises.

"(b) As used in this item the following definitions shall apply:

"1. A 'person selling mixed drinks and/or setups for mixed drinks' shall mean and include any person deriving receipts from the sale of mixed drinks and/or setups for mixed drinks or alcoholic beverages whether or not consumed on the premises and shall include any country club, night club or private club in the nature of any social, diner, athletic, or sporting club or organization, and any fraternal society, order, or association making sales and charges for any of these items.

"Provided, however, sales of mixed drinks taxed under provisions of Chapter 211 of the Public Acts of 1967 and sales of alcoholic beverages made by persons licensed under §§ 57–116 and 57–118 shall not be taxed under this item.

"The term shall not include sales of setups by cafes, cafeterias, and restaurants where such sales are merely incidental to the principal business and where no bar, lounge, or separate facility is maintained for the purpose of serving or selling mixed drinks and/or setups for mixed drinks.

"2. 'Mixed drinks and/or setups for mixed drinks' shall mean and include any sales of beverages containing any alcoholic content, other than beer, and shall include sales of water, soft drinks, ice or any item capable of being used to prepare a mixed drink at a place of business of a person liable for the tax imposed by this item."