**AFFIRM; and Opinion Filed December 16, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00712-CV

### LLOYD WARD, LLOYD WARD, P.C., LLOYD WARD & ASSOCIATES, AND LLOYD WARD GROUP, P.C., Appellants
### V.
### KELLY HAWKINS, Appellee

**On Appeal from the 298th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-12-02323-M**

## OPINION

Before Justices Fillmore, Myers, and Lewis
Opinion by Justice Fillmore

Appellants Lloyd Ward, Lloyd Ward, P.C., Lloyd Ward & Associates, and Lloyd Ward Group, P.C. appeal the denial of their motion to vacate a Kansas default judgment in favor of appellee Kelly Hawkins. In three issues, appellants contend the trial court (1) abused its discretion by not granting their motion to vacate the default judgment because the Kansas court lacked personal jurisdiction over appellants, (2) erred if it did not consider appellants' evidence that Kansas did not have jurisdiction over each appellant, and (3) erred if it did not apply Texas law to jurisdictional facts with regard to enforceability of the Kansas default judgment. We affirm the trial court's denial of appellants' motion to vacate the Kansas default judgment.

**Procedural Background**

Appellee obtained a default judgment against appellants in a district court of Marion County, Kansas. Appellee filed the lawsuit underlying this appeal in a district court of Dallas County, Texas, to enforce the Kansas judgment. Appellants filed a motion to vacate or stay enforcement of the Kansas judgment based on their contention that Kansas lacked personal jurisdiction over them. Appellants' motion was overruled by operation of law. Appellants appealed the denial of their motion to vacate the Kansas judgment.

**Application of Law to Jurisdictional Facts**

In their third issue, appellants state the trial court erred *if* it did not apply Texas law to the jurisdictional facts "during its consideration" of enforceability of the Kansas default judgment. Appellants argue the trial court erred if it did not apply Texas law in considering admitted evidence concerning conduct by which personal jurisdiction might be acquired over a nonresident party.

In support of their argument of error by the trial court if it did not apply Texas law to the determination of enforceability of the Kansas default judgment, appellants cite the "Client Services Agreement—Savings and Debt Negotiation" (Client Services Agreement) between appellee and the Lloyd Ward Group, P.C. Appellants argue it was the intention of the Lloyd Ward Group, P.C. and appellee "in their written contract" that Texas law would apply. The paragraph of the Client Services Agreement entitled "Arbitration of Dispute" provides in pertinent part:

> Client understands that this agreement is performable in Collin County, Texas and hereby consents to venue and jurisdiction in Collin County, Texas under Texas state law for any dispute arising hereunder. The parties will submit all disputes arising under or related to this Agreement to binding arbitration according to the then prevailing rules and procedures of the American Arbitration Association. Texas law will govern the rights and obligations of the parties with respect to the matters in controversy.

According to appellants, appellee did not plead or prove Kansas law, provide authority as to why Kansas law is applicable to the Texas court's jurisdictional inquiry, or give notice to appellants of appellee's intention to rely on Kansas law. Texas rule of evidence 202 provides:

> A court upon its own motion may, or upon the motion of a party shall, take judicial notice of the constitutions, public statutes, rules, regulations, ordinances, court decisions, and common law of every other state, territory, or jurisdiction of the United States. A party requesting that judicial notice be taken of such matter shall furnish the court sufficient information to enable it properly to comply with the request, and shall give all parties such notice, if any, as the court may deem necessary, to enable all parties fairly to prepare to meet the request. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken. Judicial notice of such matters may be taken at any stage of the proceeding. The court's determination shall be subject to review as a ruling on a question of law.

TEX. R. EVID. 202.

The record does not contain a motion by appellee, written or verbal, requesting that the trial court apply or take judicial notice of Kansas law. We find nothing in this record to demonstrate appellee followed the procedures required by Texas law with regard to application of Kansas law. When a party does not provide a court with proof of laws of another state by judicial notice or otherwise, then the laws are presumed to be the same as that of Texas. *See Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 720 (Tex. App.—Dallas 2004, no pet.) ("[I]n the absence of a request to take judicial notice or proper proof that the law of another state is applicable, Texas courts presume a sister state's laws are the same as Texas law."); *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 487 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (when party does not provide a court with proof of laws of another state by judicial notice or otherwise, the laws are presumed to be the same as that of Texas); *see also Colvin v. Colvin*, 291 S.W.3d 508, 514 (Tex. App.—Tyler 2009, no pet.)

–3–

Therefore, under these circumstances, a trial court would appropriately apply Texas law to the determination of the propriety of the Kansas's court exercising jurisdiction over appellants.[1]

The Kansas default judgment provides that "[b]y defaulting, each of the factual allegations and conclusions contained in [appellee's] Petition and the Motion for Default Judgment are deemed admitted by [appellants]." According to appellants, there is no Texas law comparable to Kansas law "described by Appellee, which would permit a plaintiff's pleadings, on a defendant's default, to be deemed admitted."[2] However, Texas case law specifically provides that once a default judgment is taken on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984); *Argyle Mech., Inc. v. Unigus Steele, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.) ("When a default judgment is taken against non-answering defendants on an unliquidated claim, all allegations of fact contained in the petition are deemed admitted, except for the amount of damages."); *see also* Tex. R. Civ. P. 243.[3]

Appellants contend if the trial court did not apply Texas law to the determination of personal jurisdiction, it erred. However, nothing in the record demonstrates the trial court did not apply Texas law to this determination. We resolve appellants' third issue against them.

---

[1] The trial court would appropriately apply Texas law to procedural questions. "The law of the forum state applies to procedural questions." *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 n.2 (Tex. 2010) (orig. proceeding) (per curiam). Procedural questions include matters such as preservation of error, admissibility of evidence, and standards of review. *See Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387–90 (Tex. 2008) (applying Texas law to procedural matters, including preservation of error and objections to and sufficiency of expert testimony, and applying Virginia law to fraud claim).

[2] Appellants state there is no "equivalent" to "some" of the Kansas statutes allegedly violated as described in "Appellee's Kansas law suit," but appellants state the Kansas statutes allegedly violated by appellants are irrelevant to the determination of the Kansas court's personal jurisdiction over them. *See Karstetter v. Voss*, 184 S.W.3d 396, 402 (Tex. App.—Dallas 2006, no pet.) (in collateral attack on a sister state's judgment, no defense that goes to the merits of the original controversy may be raised).

[3] The Kansas Order of Default Judgment provides "[appellants] were each given notice of this hearing and the amount of unliquidated damages sought by [appellee] pursuant to Kansas Supreme Court Rule 118(d). Proof of compliance with Kansas Supreme Court Rule 118(d) has been filed with the Court in this matter."

**Denial of Motion to Vacate Kansas Default Judgment**

In their first issue, appellants assert the Kansas default judgment was not entitled to full faith and credit because the Kansas court never acquired personal jurisdiction over appellants, and, therefore, the trial court erred by not granting appellants' motion set aside the Kansas default judgment.

*Full Faith and Credit*

Under the United States Constitution, each state must give a final judgment of a sister state the same force and effect the judgment would be entitled to in the state in which it was rendered. U.S. CONST. art. IV, § 1. A properly proven foreign judgment must be recognized and given effect in a Texas court coextensive with that to which it is entitled in the rendering state. *Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex. 1992).

Enforcement of foreign judgments in Texas is governed by the Uniform Enforcement of Foreign Judgments Act (UEFJA). TEX. CIV. PRAC. & REM. CODE ANN. §§ 35.001–.008 (West 2008 & Supp. 2013). When a judgment creditor files an authenticated copy of a foreign judgment pursuant to the UEFJA, a prima facie case for its enforcement is presented. *Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex. 1975) (quoting *Garman v. Reynolds*, 284 S.W.2d 262, 264 (Tex. Civ. App.—Fort Worth 1955, writ ref'd); *see also Russo v. Dear*, 105 S.W.3d 43, 46 (Tex. App.—Dallas 2003, pet. denied) (party seeking to enforce a foreign judgment has initial burden to present a judgment that appears on its face to be a final, valid, and subsisting judgment). Under this principle, Texas is required to enforce a valid judgment from another state. *See Bard*, 839 S.W.2d at 794. The fact that a foreign judgment was taken by default does not defeat its presumption of validity. *Markham v. Diversified Land & Exploration Co.*, 973 S.W.2d 437, 439 (Tex. App.—Austin 1998, pet. denied).

Once a properly authenticated copy of the judgment is introduced, the burden of attacking the judgment and establishing why it should not be given full faith and credit shifts to the defendant. *See Starzl v. Starzl*, 686 S.W.2d 203, 205 (Tex. App.—Dallas 1984, no writ); *Minuteman Press Int'l, Inc. v. Sparks*, 782 S.W.2d 339, 340–41 (Tex. App.—Fort Worth 1989, no writ). Public policy favors recognizing the validity of judgments. *Garza v. Tex. Alcoholic Beverage Comm'n*, 83 S.W.3d 161, 166 (Tex. App.—El Paso 2000), *aff'd*, 89 S.W.3d 1 (Tex. 2002). Therefore, "[w]hen an attack is made upon a judgment, whether directly or collaterally, all presumptions 'consonant with reason are indulged in order to uphold the binding effect of such judgment.'" *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 894 (Tex. App.—Houston [14th Dist. 2004, no pet.) (quoting *Garza*, 83 S.W.3d at 166). The presumption of validity of the foreign judgment can only be overcome by clear and convincing evidence to the contrary. *Cash Register Sales & Servs. of Houston, Inc. v. Copelco Capital, Inc.*, 62 S.W.3d 278, 281 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The defendant may try to prove any affirmative defense to the judgment; those affirmative defenses include lack of jurisdiction, faulty service, or lack of finality. *Minuteman Press*, 782 S.W.2d at 342.[4] A defendant may assert that the sister state's exercise of jurisdiction offends due process because the defendant does not have minimum contacts with the sister state. *Cash Register Sales & Servs.*, 62 S.W.3d at 281; *see also O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 341 (Tex. 1966).

A defense asserted in a Texas court against the enforcement of a foreign judgment is a collateral attack. *Karstetter v. Voss*, 184 S.W.3d 396, 402 (Tex. App.—Dallas 2006, no pet.); *Cash Register Sales & Servs.*, 62 S.W.3d at 281. In a collateral attack on a sister state's judgment, no defense that goes to the merits of the original controversy may be raised. *Karstetter*, 184 S.W.3d at 402; *Goodier v. Duncan*, 651 S.W.2d 25, 27 (Tex. App.—Dallas 1983,

---

[4] Here, appellants do not contend they were not properly served with the Kansas lawsuit or that the Kansas judgment is not final.

writ ref'd n.r.e.) (concluding the merits of the underlying action, dealing with an arbitration award, could not be addressed in an action to enforce the judgment); *Mindis Metals*, 132 S.W.3d at 486 n.7 (challenge to enforcement of foreign judgment is collateral attack and merits of original controversy may not be challenged); *Cash Register Sales & Servs.*, 62 S.W.3d at 281. A collateral attack on a judgment is successful only where the judgment is established as void. *Karstetter*, 184 S.W.3d at 402. A judgment is void only when it is apparent the court rendering it lacked (1) jurisdiction over the parties or property; (2) jurisdiction over the subject matter; (3) jurisdiction to enter the particular judgment; or (4) the capacity to act as a court. *Id.*; *see also Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).

### *Personal Jurisdiction*

The Texas long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (West 2008).[5] Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction comports with federal and state constitutional due process guarantees. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex. 2009). The long-arm statute's broad language allows Texas courts to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991)). Under

---

[5] As discussed above with regard to appellants' third issue, we have concluded appellee did not satisfy statutory requirements for application of Kansas law in determining personal jurisdiction, and there is no evidence the trial court did not apply Texas law to that determination. However, we note that in *Karstetter*, this Court has stated Kansas law regarding personal jurisdiction over a non-resident defendant comports with Texas law:

> The Kansas long-arm statute authorizes Kansas courts to exercise jurisdiction over a nonresident defendant that does business in Kansas. *See* K.S.A. § 60-308(b); *McNeal v. Zobrist*, 365 F. Supp. 2d 1166, 1169 (D. Kan. 2005). As in Texas, the Kansas long-arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause. *See Anderson v. Heartland Oil & Gas, Inc.*, 249 Kan. 458, 819 P.2d 1192, 1197–1199 (1991); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *see also BMC Software*, 83 S.W.3d at 795.

*Karstetter*, 184 S.W.3d at 402–03.

constitutional due process analysis, personal jurisdiction is achieved "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* at 575 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The purpose of the minimum contacts analysis is to protect a nonresident defendant from being haled into court when its relationship with the forum state is too attenuated to support jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002). "Significant contacts suggest that the defendant has taken advantage of forum-related benefits, while minor ones imply that the forum itself was beside the point." *Spir Star AG v. Kimich,* 310 S.W.3d 868, 872 (Tex. 2010). Only if minimum contacts are established does the court consider the second prong of the constitutional due process analysis—whether maintenance of the action offends traditional notions of fair play and substantial justice. *Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 602 (Tex. App.—Dallas 2010, no pet.); *see also Clark v. Noyes,* 871 S.W.2d 508, 520 (Tex. App.—Dallas 1994, no writ).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795–96 (Tex. 2002). General jurisdiction will attach if the defendant's contacts with the forum are continuous and systematic, regardless of whether the alleged liability arises from those contacts. *Id.* at 796.[6] Specific jurisdiction is dispute-specific and attaches when the plaintiff's cause of action arises out of or relates to the nonresident defendant's contacts with the forum state. *Retamco,* 278 S.W.3d at 338. The analysis focuses on the relationship among the defendant, the forum, and the

---

[6] In his petition filed in the Kansas lawsuit against appellants, appellee's pleadings are specific to the facts regarding appellants' liability for activity involving appellee only. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."). Although appellee's brief discusses evidence regarding appellants' internet websites, whether those websites were interactive, and the testimony of Lloyd Ward that "we" have seven Kansas clients who entered into Client Service Agreeements, appellee does not argue this evidence supports general jurisdiction.

litigation. *Id*. For specific jurisdiction to attach, there must be a substantial connection between the nonresident defendant's contacts with the forum and the operative facts of the litigation. *Moki Mac,* 221 S.W.3d at 585.

Under either a specific or general jurisdiction analysis, the relevant contacts are those through which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco,* 278 S.W.3d at 338. In determining purposeful availment, we consider three issues. *Id.* at 338–39. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Id.* at 339. Second, the contacts must be purposeful rather than random, fortuitous, or attenuated. *Id*. Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* What is important is the quality and nature of the defendant's contacts with the forum state rather than their number. *Id.*

*Standard of Review*

A motion contesting enforcement of a foreign judgment operates as a motion for new trial. *Karstetter*, 184 S.W.3d at 402; *Mindis Metals*, 132 S.W.3d at 483; *see also Moncrief v. Harvey*, 805 S.W.2d 20, 23 (Tex. App.—Dallas 1991, no writ) (analogizing motion to vacate foreign judgment to motion for new trial with respect to filing deadlines and appellate timetables). A trial court has broad discretion in ruling on a motion for new trial, and we may not disturb its ruling absent an abuse of discretion. *Karstetter*, 184 S.W.3d at 402; *Mindis Metals*, 132 S.W.3d at 485. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles or whether the trial court's actions were arbitrary or unreasonable under the circumstances of the case. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

We apply the abuse of discretion standard recognizing that the law required the trial court to give full faith and credit to the Kansas default judgment unless appellants established an exception. *See Mindis Metals*, 132 S.W.3d at 485. The determination of whether appellants established an exception to full faith and credit generally involves a factual inquiry, not resolution of a question of law. *See id*. at 486. Whether a court has personal jurisdiction over a defendant is a question of law. *BMC Software*, 83 S.W.3d at 794. The trial court has no discretion in applying the law to the established facts. *Mindis Metals*, 132 S.W.3d at 485. Therefore, we review the record to determine whether the trial court misapplied the law to the established facts by concluding appellants did not establish an exception to full faith and credit. *Id*. at 486.

*Analysis*

Appellee sued appellants in a district court of Marion County, Kansas for violations of the Kansas Consumer Protection Act, violations of the Kansas Credit Services Organization Act, and breach of fiduciary duty. Appellants had the election not to appear in the Kansas court. *See Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). Appellants did not appear in the Kansas court, and the Kansas court entered the default judgment against appellants. The Texas district court lawsuit was brought by appellee to enforce the Kansas default judgment. Therefore, appellants could raise the issue of personal jurisdiction in the Texas lawsuit because they "never [had their] day in court with respect to jurisdiction." *Id*.

By filing an authenticated copy of the Kansas default judgment, appellee presented a prima facie case for its enforcement in Texas, and the burden shifted to appellants to prove why it should not be given full faith and credit.[7] According to appellants' motion to vacate, the

---

[7] On appeal, appellants assert in a footnote of their brief that it "[i]s not clear . . . the Kansas court filings were properly authenticated." In appellants' objections and motion to strike appellee's exhibits filed in the trial court, appellants objected to the Order of Default Judgment, stating, "If the Marion County District Clerk's original 'attestation' was filed with the court, no objection. Otherwise, it is not clear what

–10–

Kansas default judgment offends due process because they did not have minimum contacts with Kansas sufficient to give rise to either general[8] or specific jurisdiction, asserting "they did not have continuous or systematic contacts in Kansas and they did not conduct any activities within Kansas." Appellants contend that, because appellee specifically sought out the services of Lloyd Ward, P.C., Lloyd Ward & Associates, and Lloyd Ward Group, P.C., any contacts appellants had with Kansas were fortuitous and not purposeful.

The Kansas default judgment recites jurisdictional facts, stating appellants are subject to the Kansas court's jurisdiction because:

> they each, in person or through an agent or instrumentality, and operating as a joint venture at all times relevant to this dispute: (1) transacted business in Kansas; (2) committed tortious acts in Kansas; (3) entered into a contract with [appellee], a resident of Kansas, to be performed in whole or in part in Kansas, (4) caused injury to [appellee] arising out of [appellants'] acts and omissions outside of Kansas when, at the time, [appellants] were engaged in solicitation or service activities in Kansas; and (5) provided legal advice and assistance to [appellee] in responding to a lawsuit filed against [appellee] in Marion County District Court (Case No. 10 LM 28), and assisting [appellee] in obtaining a continuance of a hearing on a motion for summary judgment filed in the same matter.[9]

Although recitals in the foreign judgment are generally presumed valid, in an action to enforce a foreign judgment, a Texas court may consider evidence that goes to the jurisdiction of the sister state court over the parties or the subject matter. *Lanier Worldwide, Inc.*, 124 S.W.3d at 903 n.34.

---

documents . . . the 'papers in writing to which this certificate is attached' are the subject of certification." Appellants moved the trial court to strike appellee's exhibits, including the Order of Default Judgment, "to the extent such exhibits contain documents which have not been properly authenticated . . . ." On appeal, appellants acknowledge the trial court did not rule on their objections to appellee's exhibits. To complain on appeal of an asserted defect in authentication of appellee's exhibits, appellants were required not only to object, but to obtain a ruling from the trial court on their objections. *See Shaw v. Cnty. of Dallas*, 251 S.W.3d 165, 174 (Tex. App.—Dallas 2013, no pet.) (to preserve complaint for appellate review, party must generally present the complaint to the trial court by timely request, motion, or objection, stating the specific grounds, and obtain a ruling); *see also Watts v. Hermann Hosp.*, 962 S.W.2d 102, 105 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Improper certification or authentication objections are waived by appellants' failure to secure rulings on those objections. *See Hicks v. Humble Oil & Ref. Co.*, 970 S.W.2d 90, 93 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

[8] As discussed above, appellee has not argued appellants were subject to personal jurisdiction of Kansas on the basis of general jurisdiction.

[9] Appellee's Petition against appellants in the Kansas lawsuit underlying the Kansas Order of Default Judgment contains the following allegation regarding jurisdiction over appellants:

> 8. Pursuant to K.S.A. 60-308(b)(1), the Court has jurisdiction over [appellants] because they transacted business in Kansas, committed tortious acts in Kansas, and entered into a contract with [appellee], a resident of the State of Kansas and the contract was performed in whole or in part in [Kansas].

–11–

In appellee's Petition against appellants in the Kansas lawsuit underlying the Kansas default judgment, appellee alleged the following facts:

2. Defendant Lloyd Ward is an attorney licensed in Texas. He is an officer of [Lloyd Ward, P.C., Lloyd Ward & Associates, Lloyd Ward Group, P.C.] and he participated in, approved, and/or sanctioned the wrongful acts taken by [Lloyd Ward, P.C., Lloyd Ward & Associates, Lloyd Ward Group, P.C.].

3. Lloyd Ward, P.C. is a law firm that provides debt reduction and debt settlement plans to members of the general public.

4. Lloyd Ward & Associates d/b/a Lloyd Ward Group, LLC is a law firm that provides debt reduction and debt settlement plans to members of the general public.

\* \* \*

6. Lloyd Ward, Lloyd Ward, P.C., and Lloyd Ward & Associates are a joint venture.

\* \* \*

13. In Mid-April 2010, [appellee] researched debt reduction and debt negotiation plans on the internet. On [appellants'] website, he was required to input his name, address, and telephone number in order to view material on debt negotiation plans.

14. [Appellee] was contacted by telephone by Chad McDonald, representing [appellants].

\* \* \*

18. [Appellee] hired [appellants] on April 16, 2010. [Appellee] entered into [Client Services Agreement] contract with [appellants] . . . over the internet from his home in Hillsboro, Kansas, while on the telephone with McDonald.

19. While the contract purports to be between [appellee] and "Lloyd Ward Group, LLC, an operating division of Lloyd Ward, P.C.," it also includes "Lloyd Ward Attorney at Law" in the heading.

20. The contract provides that "Client [appellee] retains [Lloyd Ward Group, LLC, an operating division of Lloyd Ward, P.C.] for the limited and express purposes of providing legal and administrative services limited to Savings and Debt Negotiation with respect to [appellee's] existing debt and current creditors . . . .

\* \* \*

21. The contract further provides that "[Lloyd Ward Group, LLC, an operating division of Lloyd Ward, P.C.] will act as [appellee's] attorney to negotiate with [appellee's] creditors . . . ."

–12–

22. As part of the contract with [appellants], [appellee] was required to sign an "Authorization for Debt Negotiation" authorizing Lloyd Ward Group to negotiate on his behalf. The heading to the Authorization for Debt Negotiation includes "Lloyd Ward & Associates, Attorneys at Law" and "Lloyd Ward P.C."

23. As part of [appellee's] contract with [appellants], [appellee] was required to open a trust account with NoteWorld Servicing Center, LLC . . . .

\* \* \*

25. To enroll in [appellants'] Saving and Debt Negotiation Plan, [appellee] was required to pay [appellants] a "program fee" . . . .

\* \* \*

31. As instructed by [appellants], [appellee] quit making payments to Citibank when he entered into a contract with [appellants] . . . .

\* \* \*

33. [Appellants] contacted [appellee] on July 21, 2010, through Joy Phillips, who claimed to be his "Account Specialist." She instructed [appellee] to contact her with any questions or concerns. Her email address was [lloydwardlawfirm.com].

\* \* \*

38. In response to [an earlier email from appellee], Joy Phillips emailed documents to [appellee] that were intended to prove that [appellants] had actually contacted Citibank and had been negotiating on his behalf, as provided in his contract. These documents were:

> (1) a purported copy of a letter to Citibank . . . stating that [appellee] "has enrolled in Lloyd Ward & Associates debt Negotiation Program";
> (2) a purported copy of an envelope addressed to Citibank . . . with a return address of "Lloyd Ward & Associates Attorney at Law"; and
> (3) a purported copy of an envelope addressed to Citibank . . . with a return address of "Lloyd Ward & Associates Attorney at Law."

39. . . . [Appellee] received an email from Joy Phillips informing him that [appellants] was [sic] "working diligently to resolve [his] accounts and [she] will facilitate active negotiations the moment we have sufficient funds."

\* \* \*

–13–

48. . . . [Appellee] emailed Joy Phillips to inform her that he had been served with the lawsuit [filed by Citibank against him] and that there was a hearing set for November 22, 2010 . . . .

49. [Appellee] was then contacted by Joy Cooper, another employee of [appellants]. Her email address was [lloydwardlawfirm.com].

50. Joy Cooper gave [appellee] advice on drafting a response to the summons and advice on drafting a hardship letter. She asked [appellee] to email drafts to her as soon as possible. The "Summons Response Form Instructions" that Cooper gave to [appellee] are attached [to appellee's pleading].

\* \* \*

60. [In a conversation with Joy Phillips, appellee] explained that he had been contacted by someone named "Dana" with [appellants] and that she said [appellants] would now try to negotiate a payment plan with Citibank.

\* \* \*

69. . . . Citibank's attorneys and someone named "Dana" from [appellants] jointly requested and received a continuance in Citibank's lawsuit against [appellee].

Those facts are deemed admitted. *See Compugraphic Corp.*, 675 S.W.2d at 731; *Argyle Mech., Inc.*, 156 S.W.3d at 687.

In contesting personal jurisdiction over them in Kansas, appellants relied on the affidavits of Lloyd Ward and Lloyd Ward's testimony at the hearing of appellants' motion to vacate the Kansas default judgment. The evidence is undisputed that Lloyd Ward is a Texas lawyer and is the sole officer and director of Lloyd Ward, P.C., Lloyd Ward & Associates, and Lloyd Ward Group, P.C. According to appellants, Lloyd Ward & Associates, Lloyd Ward, P.C., and Lloyd Ward Group, P.C. are separate Texas business entity law firms with which Lloyd Ward is affiliated. Lloyd Ward attested he has never been to Kansas and none of appellants own property in Kansas, maintain a bank account in Kansas, or have an office in Kansas. According to Lloyd Ward's affidavit, Lloyd Ward, P.C., Lloyd Ward & Associates, and Lloyd Ward Group, P.C. do not maintain an office or "do business" in Kansas. Lloyd Ward stated none of appellants

specifically availed themselves of the protections or privileges of Kansas law and that it has always been the intention of Lloyd Ward, P.C., Lloyd Ward & Associates, and Lloyd Ward Group, P.C. "to remain under the auspices of Texas law."[10]

Lloyd Ward attested neither he, Lloyd Ward, P.C. or Lloyd Ward & Associates entered into a contract to be performed in whole or in part with appellee. Appellants do not contest appellant Lloyd Ward Group, P.C. contracted with appellee. Appellee pleaded and the Kansas default judgment specifically states appellants operate as a joint venture. Appellants' evidence in support of their motion to vacate the Kansas default judgment does not establish by clear and convincing evidence that appellants do not operate as a joint venture. Lloyd Ward acknowledged appellee and Lloyd Ward Group, P.C.[11] entered into the Client Services Agreement[12] and stated it is a "standard contract used by [Lloyd Ward, P.C., Lloyd Ward & Associates, and Lloyd Ward Group, P.C.] for all clients seeking services similar to those sought by [appellee]." At the top of the Client Services Agreement, it references "Lloyd Ward, P.C." and "Lloyd Ward, Attorney at Law," as well as the email address for Lloyd Ward. Further, the record contains a letter reflecting signature by "Lloyd Ward, Esq., Lloyd Ward, P.C.," which states that appellee entered into an agreement with "Lloyd Ward."[13] In conjunction with the Client Services Agreement, appellee entered into the "Authorization for Debt Negotiation" with

---

[10] In their appellate brief, appellants note that, in addition to their motion for new trial, they requested a declaration the Kansas default judgment was unenforceable for lack of personal jurisdiction over appellant Lloyd Ward Group, P.C. "because of Appellee's agreement to jurisdiction in Texas." Citing to the "Arbitration of Dispute" provision of the Client Services Agreement, appellants state in their brief that "jurisdiction for disputes between the parties was to be in Texas." While this paragraph provides for consent to venue and jurisdiction in Texas of disputes arising under the agreement, it does not contain agreement to exclusive jurisdiction in Texas. *See Mabon Ltd. v. Afri-Carib Enters., Inc.*, 29 S.W.3d 291, 297 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (forum selection clause stating Nigeria "shall have venue" does not provide for exclusive jurisdiction in Nigeria and is permissive in nature, indicating parties may bring suit in Nigeria but are not required to do so). "An enforceable forum selection clause must contain explicit language regarding exclusivity." *Id.*; *see also SW Intelecom, Inc.*, 997 S.W.2d 322, 323–25 (Tex. App.—Austin 1999, pet. denied).

[11] Lloyd Ward testified Lloyd Ward Group, LLC does not exist and should be correctly referenced as Lloyd Ward Group, P.C.

[12] Appellants argue that the contract upon which appellants are sued is between appellee and Lloyd Ward Group, P.C. only, and, therefore, appellee "has no cause of action against Lloyd Ward, individually, Lloyd Ward, P.C., or Lloyd Ward & Associates." However, in this collateral attack on Kansas's default judgment, no defense that goes to the merits of the original controversy may be raised. *See Karstetter*, 184 S.W.3d at 402; *Goodier*, 651 S.W.2d at 27.

[13] Lloyd Ward testified that the reference in the letter to an agreement with "Lloyd Ward" was actually a reference to "Lloyd Ward Group, P.C.," the signature on the letter was a stamp and not actually signed by him, and the letter came from a secretary in his office.

–15–

Lloyd Ward Group, P.C. The heading of the Authorization for Debt Negotiation references Lloyd Ward & Associates and Lloyd Ward, P.C. As part of the Client Services Agreement, appellee was required to open a trust account with NoteWorld Servicing Center, LLC. The NoteWorld Servicing Center "Customer Account Services Information" lists the Debt Settlement Company as Lloyd Ward & Associates.

In their brief, appellants argue Lloyd Ward Group, P.C. did not enter into a contract to be performed in Kansas with appellee, and in support of that argument, appellants cite to a portion of Lloyd Ward's testimony at the hearing of appellants' motion to vacate. However, appellee's objection to that testimony was sustained, and appellants have not asserted on appeal that the trial court erred in sustaining appellee's objection. The testimony may not be considered as evidence in support of appellants' motion to vacate the Kansas default judgment. Appellants' evidence in support of their motion to vacate the Kansas default judgment did not establish by clear and convincing evidence that they did not undertake activities and business services in Kansas pursuant to the contract with appellee for debt negotiation. The evidence established appellants provided advice on withholding payment of debt to Citibank, drafting a response to the lawsuit filed against appellee by Citibank in the Marion County, Kansas district court, and preparing a "hardship letter" to explain appellee's financial hardship. Additionally, appellants communicated on behalf of appellee with attorneys for Citibank and, in conjunction with Citibank's attorneys, requested and were granted a continuance in Citibank's Kansas lawsuit against appellee.

Appellants did not overcome the presumption of validity of the Kansas default judgment by clear and convincing evidence. The evidence in the record established appellants' liability arose from or is related to activity conducted by appellants in Kansas and that appellants had purposeful contacts with Kansas, thus invoking the benefits and protections of its laws. *See*

–16–

*Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226. Appellants had sufficient minimum contacts with Kansas to permit the Kansas district court to exercise personal jurisdiction over them.

### *Conclusion*

Appellants did not establish by clear and convincing evidence that the Kansas court lacked personal jurisdiction over them. We conclude the record establishes sufficient minimum contacts with Kansas to permit the Kansas district court to exercise personal jurisdiction over appellants.[14] The record does not establish that the Kansas judgment is void. *Hungate v. Hungate*, 531 S.W.2d 650, 653 (Tex. Civ. App.—El Paso 1975, no writ) (when a sister state judgment is assailed in Texas, judgment must be void for collateral attack to be successful). Accordingly, we resolve appellants' first issue against them.

### **Consideration of Appellants' Evidence**

In their second issue, appellants state the trial court erred *if* it did not consider appellants' evidence concerning the alleged jurisdiction of Kansas over each appellant. According to appellants, the "competent evidence" before the trial court was "clear, convincing, and uncontroverted, show[ing] that Kansas did not acquire *in personam* jurisdiction over any of the Appellants, thus, the Kansas default judgment is void and unenforceable."

Here, the only justification for the trial court to grant appellants' motion to vacate the Kansas default judgment would be a determination that the Kansas court lacked personal jurisdiction over appellants. Based on a thorough review of the record, we concluded with regard to appellants' first issue that the trial court did not err by permitting appellants' motion to vacate the default judgment to be overruled by operation of law. *See Strackbein v. Prewitt*, 671

---

[14] We question whether appellee asserted general jurisdiction over appellants in his pleading. However, to the extent appellee pleaded general jurisdiction, having concluded appellants' contacts with Kansas gave rise to specific jurisdiction, we need not address general jurisdiction. *See* TEX. R. APP. P. 47.1.

S.W.2d 37, 39 (Tex. 1984); *see also Mindis Metals, Inc.*, 132 S.W.3d at 486 (we review record to determine whether trial court misapplied law to established facts with regard to enforcement of foreign judgment); *Blandford v. Ayad*, 875 S.W.2d 12, 14 (Tex. App.—Amarillo 1994, no writ) ("[W]e will not presume from an orderless, and otherwise silent record that the trial court judged the credibility of the witnesses, and then exercised its discretion to deny a motion for new trial by allowing it to be overruled by operation of law. Instead, we will review the record to determine whether a mistake of law was made in permitting the motion [for new trial] to be overruled by operation of law.").

The record does not support an argument that the trial court did not consider appellants' admitted evidence concerning personal jurisdiction of the Kansas court over appellants. At the hearing of appellants' motion to vacate the default judgment, the trial court stated appellants would be allowed to elicit testimony of Lloyd Ward and the trial court would "give it whatever weight I think it's entitled to." At the end of the hearing, the trial court stated it would make its ruling on appellants' motion to vacate the Kansas default judgment based "on the record I've got." At oral argument, appellants' counsel acknowledged there was nothing in the record to show appellants' admitted evidence was not considered by the trial court.

Appellants' statement that there was clear and convincing evidence that the Kansas court did not acquire personal jurisdiction over appellants is a reiteration of appellants' first issue, and as discussed above, we have concluded the trial court did not err by permitting appellants' motion to vacate the Kansas default judgment to be overruled by operation of law. This record does not support an argument the trial court erred by failing to consider appellants' admitted evidence. We resolve appellants' second issue against them.

## Conclusion

We affirm the denial of appellants' motion to vacate the Kansas default judgment.


/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE


120712F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LLOYD WARD, LLOYD WARD, P.C.,
LLOYD WARD & ASSOCIATES, AND
LLOYD WARD GROUP, P.C., Appellants

No. 05-12-00712-CV      V.

KELLY HAWKINS, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas.
Trial Court Cause No. DC-12-02323-M.
Opinion delivered by Justice Fillmore,
Justices Myers and Lewis participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellants' motion to vacate the foreign judgment is **AFFIRMED**.

It is **ORDERED** that appellee Kelly Hawkins recover the full amount of the foreign judgment and the costs of this appeal from appellants Lloyd Ward, Lloyd Ward, P.C., Lloyd Ward & Associates, and Lloyd Ward Group, P.C. and from any supersedeas bond or cash deposit in lieu of supersedeas bond. After the judgment and all costs have been paid, we **DIRECT** the clerk of the trial court to release the balance, if any, of any supersedeas bond or cash deposit in lieu of supersedeas bond to appellants.

Judgment entered this 16th day of December, 2013.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE