

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00404-CV

XTRA LEASE LLC                                             APPELLANT

V.

GENESIS TRUCKYARD, LLC                           APPELLEE

----------

## FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 236-266393-13

----------

## MEMORANDUM OPINION[1]

----------

Appellant XTRA Lease LLC appeals the trial court's order vacating a foreign judgment that it had domesticated in Texas pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA).  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001–.008 (West 2008 & Supp. 2014).  We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

In July 2012, XTRA entered into an Equipment Lease Agreement (ESL) with Genesis Express, Inc.  One of the ESL's provisions stated that the parties "hereby submit to the jurisdiction of the Circuit Court of St. Louis County, Missouri for purposes of adjudicating any action arising out of or related to the Lease."

In January 2013, XTRA sued Express in a St. Louis County, Missouri circuit court to recover damages for Express's alleged breach of the ESL.  XTRA also named Appellee Genesis Truckyard, LLC as a defendant to the suit.  XTRA alleged that Express had defaulted on its obligations under the ESL but also that it had "stopped doing business" and had transferred its assets to Truckyard in order to defraud its creditors.  According to XTRA, Truckyard had retained the same customers and equipment as Express and had impliedly agreed to assume Express's liability under the ESL; consequently, Express's liability under the ESL extended to Truckyard because it was "a mere continuation" or "a successor liability company" of Express.  Several months later, the circuit court signed a default judgment in favor of XTRA and against Truckyard in the amount of $289,811.98.  The judgment recited that although duly served, Truckyard had failed to plead or otherwise defend against XTRA's petition.

In June 2013, pursuant to the UEFJA, XTRA domesticated the Missouri judgment against Truckyard by filing an authenticated copy of the judgment with the clerk of the Tarrant County district court and by providing Truckyard with notice of the filing.  Truckyard promptly filed a motion to vacate the Missouri

2

judgment on the ground that the circuit court had lacked personal jurisdiction over Truckyard. Specifically, Truckyard argued that because Truckyard had no contacts with Missouri and had never had any business dealings with XTRA, XTRA was constrained to aver in its Missouri petition that Truckyard was liable for Express's alleged breach of the ESL under the theory of successor liability. Truckyard also challenged XTRA's invocation of successor liability, contending that it did not apply—and that the trial court therefore lacked any basis upon which to exercise personal jurisdiction over Truckyard—because Truckyard did not assume any liability of Express under the ESL, did not assume possession of any of the equipment that Express had leased from XTRA under the ESL, had never purchased or acquired any assets from Express, and was not a continuation of Express. The trial court granted Truckyard's motion after conducting an evidentiary hearing and later entered findings of fact and conclusions of law, finding in part that "Truckyard has not purchased or acquired any asset from Express" and that "Express has not agreed to sell, assign or transfer any assets to Truckyard." The trial court concluded in part that "Truckyard is not a successor liability company to Express," that "Truckyard is not a continuation of Express," and that "[t]he Missouri court did not have the requisite jurisdiction to enter the Missouri Judgment against Truckyard."

XTRA argues in its only issue that the trial court abused its discretion by vacating the properly domesticated Missouri judgment. XTRA acknowledges that its Missouri petition relied solely upon Missouri's successor liability law to impose

3

liability upon Truckyard for Express's breach of the ESL, but it contends that the legal theory applied because there are a number of similarities between Express and Truckyard. Because Express had contractually agreed to submit to Missouri's jurisdiction and because Truckyard was Express's successor in liability, XTRA contends that the Missouri circuit court had personal jurisdiction over Truckyard.

Truckyard responds that it is neither a continuation of nor a successor to Express because it did not acquire all, or substantially all, of Express's assets. Because successor liability did not apply to impose liability on Truckyard for Express's breach of the ESL, Truckyard contends that Express's submission to Missouri jurisdiction under the ESL did not apply to Truckyard and that the trial court correctly granted the motion to vacate because the Missouri circuit court had no personal jurisdiction over Truckyard.

Accordingly, as the parties have developed the issue and presented it on appeal, whether the trial court properly vacated the Missouri judgment on jurisdictional grounds depends on whether Truckyard was liable under the ESL as a successor entity of Express.

The United States Constitution requires that full faith and credit be given in each state to the public acts, records, and judicial proceedings of every other state. U.S. Const. art. IV, § 1. In Texas, enforcement of foreign judgments is governed by the Texas version of the UEFJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 35.002; *Tri-Steel Structures, Inc. v. Hackman*, 883 S.W.2d 391, 393 (Tex.

4

App.—Fort Worth 1994, writ denied). When a judgment creditor files an authenticated copy of a foreign judgment, the judgment creditor satisfies its burden to present a prima facie case for enforcement of the judgment. *EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.*, 265 S.W.3d 16, 19 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (op. on reh'g). The burden then shifts to the judgment debtor to prove why the sister state's judgment should not be given full faith and credit. *Id.* at 19–20. A well-established exception to the requirement that a foreign judgment be afforded full faith and credit is the defense that the sister state lacked personal jurisdiction over the judgment debtor. *Ward v. Hawkins*, 418 S.W.3d 815, 822 (Tex. App.—Dallas 2013, no pet.); *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 713 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 279 (Tex. 1989) (stating that a judgment is void when it is apparent that the court rendering judgment had no jurisdiction of the parties). The presumption of validity that accompanies a foreign judgment can only be overcome by clear and convincing evidence, and the law of the state rendering the judgment determines its validity. *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

We review a trial court's order vacating a foreign judgment for an abuse of discretion. *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 61 (Tex. App.— Houston [14th Dist.] 2013, no pet.); *Ward*, 418 S.W.3d at 824 (reasoning that a

5

motion contesting enforcement of a foreign judgment operates as a motion for new trial and that the trial court has broad discretion in this regard).  We apply the abuse of discretion standard, recognizing that the law required the trial court to give full faith and credit to the Missouri judgment unless Truckyard established an exception.  *Jonsson v. Rand Racing, L.L.C.*, 270 S.W.3d 320, 324 (Tex. App.—Dallas 2008, no pet.).  The determination of whether a judgment debtor established such an exception generally involves a factual inquiry, not resolution of a question of law.  *Id.*  But whether a court has personal jurisdiction over a defendant is a question of law.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  The trial court has no discretion in applying the law to the established facts.  *Ward*, 418 S.W.3d at 824.  Therefore, we review the record to determine whether the trial court misapplied the law to the established facts in concluding that Truckyard established an exception to the full faith and credit doctrine.  *See id.*

A Missouri court of appeals recently reasoned as follows:

> Missouri courts recognize the traditional distinction between: (1) "corporate mergers or the sale and purchase of outstanding stock of a corporation, whereby preexisting corporate liabilities also pass to the surviving corporation or to the purchaser"; and (2) "the sale and purchase of corporate assets[,] which eliminates successor liability."  Accordingly, "[t]he general rule of law in Missouri and most other jurisdictions is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former."  There are four exceptions to the general rule of nonliability:  (1) when the purchaser expressly or impliedly agrees to assume the debts and liabilities; (2) when the transaction amounts to a consolidation or merger; (3) *when the purchaser is merely a continuation of the seller*; and

6

(4) when the transaction is entered into fraudulently to escape liability for the debts and liabilities.

> . . . .

> "Most jurisdictions hold that a prerequisite to the imposition of liability against a corporation under any of the four exceptions to the nonliability of successors is a transfer or sale of all, or substantially all, the assets of the predecessor to the successor." *We agree with these jurisdictions and hold that a transfer of all or substantially all of the assets of one corporation to another is a prerequisite to corporate successor liability under any of the four exceptions to the general rule of nonliability.* Our holding is merely a logical extension of established Missouri law on corporate successor liability, as our cases neither mention nor even hint that the four exceptions might apply in the absence of a transfer of all or substantially all assets. Our holding is also a logical extension of the rule that "[o]rdinarily, the separate legal identities of two corporations will be protected." Imposing successor liability on a corporation acquiring less than substantially all assets of another corporation would violate this basic principle of corporate law.

*Edwards v. Black Twig Mktg. & Commc'ns LLC*, 418 S.W.3d 512, 520–21 (Mo. App. E.D. 2013) (emphasis added) (citations and footnotes omitted); *see Ingram v. Prairie Block Coal Co.*, 319 Mo. 644, 653, 5 S.W.2d 413, 416 (1928).

Four people testified at the hearing on Truckyard's motion to vacate. Beatrice Ogango testified that she purchased Seacom Freight LLC in November 2012 for $10,000, that she changed the name of the company to Genesis Truckyard LLC, and that she is the manager of Truckyard.[2] Truckyard operates online as a broker for businesses that need freight shipped and owners of trucks

---

[2]Plaintiff's Exhibit 1 is a buy-sale contract that reflects the transaction. Plaintiff's Exhibit 5 is a certificate of amendment that changes Seacom Freight LLC's name to Genesis Truckyard LLC.

7

seeking to transport freight.[3]  Truckyard has an office, but it does not have customer accounts or own any trucks or trailers, nor are the owners or operators of the trucks and trailers that transport the freight the employees of Truckyard.

Ogango testified that Truckyard had not conducted any business in Missouri, had never maintained an office in Missouri, had never had any employees in Missouri, had never initiated litigation in Missouri, and had never owned any property in Missouri.  Contrary to XTRA's allegations in its Missouri petition, Ogango explained that Truckyard had never assumed or agreed to assume any debt or liability of Express, had never acquired any property or assets from XTRA, had never paid any debts that Express owed, and had never entered into any contracts with Express.  Ogango also disputed that Truckyard had ever had any control of any equipment (trailers) that belonged to Express.

On cross-examination, Ogango agreed that her husband, Thomas Ondari, had been the owner of Express, that Truckyard's business is similar to the business that Express had operated, that Truckyard had begun doing business around the same time that Express had ceased doing business, that several truck drivers who drove for Express had applied to drive for Truckyard, and that she had previously worked as a nurse's aide and at a gas station.  Ogango testified that Ondari is not an owner of, nor does he participate in managing, Truckyard.

---

[3]Essentially, Truckyard makes a commission by finding drivers to transport loads.

Celestine Andrews testified that she had formed Seacom Freight but later sold it because it "didn't work out." Andrews's boyfriend, Bill Owuor, testified that Ondari had contacted him about selling Seacom Freight, that he had conducted the buy-sale transaction, and that he thought Ondari was the one who had purchased Seacom Freight.

Ondari testified that he is Ogango's husband, that he was the owner of Express, and that he now works in a shop fixing big trucks. Ondari said that "the Government" had "shut down" Express because "the insurance company could not get us a policy." Ondari acknowledged that Express had ceased doing business on or about December 7, 2012, that Express's business model was similar to Truckyard's business model, and that Truckyard is a tenant in a building that he owns. XTRA questioned Ondari about a $7,500 payment that he had received from Truckyard, but Ondari explained that it was repayment for a loan.

Directing us to the pertinent parts of the record, XTRA argues that Truckyard "is nothing more than a continuation of and successor to" Express because Truckyard "conducted exactly the same business as [Express], at the same location, with the same people." We disagree. XTRA's analysis is inconsistent with Missouri law because it largely ignores the requirement that as a prerequisite to imposing corporate successor liability, there must have been a transfer of all or substantially all of the assets of one corporation to another. *See Edwards*, 418 S.W.3d at 520–21. We cannot overlook the requirement of a

9

substantial asset transfer and proceed to consider one or more exceptions to the general rule of nonliability—as XTRA implicitly advocates—because the asset transfer is the underlying occurrence that provides the impetus for considering whether one entity is a continuation of the other.[4] Further, predicating successor liability upon mere similarities between two separate entities without requiring a substantial asset transaction would compromise, or effectively render meaningless, each entity's separate legal identity.

Here, while XTRA offered evidence of similarities between Truckyard and Express, it presented no evidence that Truckyard had acquired all or substantially all of Express's assets. To the contrary, Ogango's uncontroverted testimony was that Truckyard had never acquired any property or assets from XTRA, had never assumed or agreed to assume any debt or liability of Express, had never paid any debts that Express owed, and had never entered into any contracts with Express. Consequently, any exceptions to the general rule of nonliability, including whether a purchaser of assets is merely a continuation of the seller of assets, were never triggered. *See id.*

A Missouri court of appeals decision demonstrates our point precisely. *See Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708 (Mo. App. S.D.

---

[4]"The policy is that, *whenever there is a transfer of assets*, the rights of a creditor must be protected. . . . The exception is designed to prevent a situation whereby the specific purpose of *acquiring assets* is to place those assets out of reach of the predecessor's creditors." *Baltimore Luggage Co. v. Holtzman*, 562 A.2d 1286, 1293 (Md. Ct. Spec. App. 1989), *cert. denied*, 318 Md. 323 (1990) (emphasis added).

10

2001). Roper performed work for Quality, but Quality never paid Roper. *Id.* at 710. Around the same time, Quality and Bagby Enterprises, Inc. entered into a "Sale of Assets Agreement," whereby Quality sold all of its assets to Bagby for certain consideration. *Id.* Roper subsequently sued both Quality and Bagby to recover the money that it was owed from Quality and prevailed. *Id.* at 709–10. In concluding that the evidence amply supported the trial court's judgment imposing liability on Bagby for Quality's debt under the corporate continuation doctrine, the court of appeals reasoned as follows:

> *All of the assets of* [*Quality*] *were transferred to Bagby*; Bagby retained all of [Quality's] employees without notifying them of any change in ownership; neither Bagby nor [Quality] notified [Roper], as a creditor, of the change in ownership; Bagby continued the exact same business using the same equipment and had the same customers as [Quality], but never notified them of the change; Bagby held itself out to the public as [Quality] by utilizing the same trade name . . . ; Bagby retained the key employees in management positions . . . ; [and] Bagby took over the works in progress of [Quality], collected the accounts receivable, operated in the same location, and had the same phone number as [Quality] . . . .

*Id.* at 713 (emphasis added). The court of appeals thus analyzed facts that were relevant to whether Bagby was merely a continuation of Quality, but unlike the evidence involving Express and Truckyard in this case, the court had before it undisputed evidence that one defendant (Quality) had transferred its assets to the other defendant (Bagby)—a prerequisite to corporate successor liability under any of the four exceptions to the general rule of nonliability. *Id.* at 710, 713; *see Edwards*, 418 S.W.3d at 520–21.

11

Truckyard filed a motion to strike several documents that XTRA included in the appendices to its opening and reply briefs, arguing that we should not consider the documents because they are not part of the record. We deny Truckyard's motion as moot because even if we considered the disputed documents, we would resolve XTRA's issue against it.

Because Truckyard could not have been liable under the ESL as a successor entity of Express and because XTRA relied upon no other facts or theories to support the Missouri circuit court's exercise of personal jurisdiction, the Missouri court had no basis by which to exercise personal jurisdiction over Truckyard. Truckyard therefore met its burden to prove by clear and convincing evidence that full faith and credit should not be afforded to the Missouri judgment. We hold that the trial court did not abuse its discretion by granting Truckyard's motion to vacate.[5] We overrule XTRA's only issue and affirm the trial court's order.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED: December 11, 2014

---

[5]To the extent that XTRA challenges any of the trial court's findings and conclusions, we hold that the evidence is legally and factually sufficient to support the court's findings and that its conclusions of law are correct.